IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GENESEE COUNTY EMPLOYEES' RETIREMENT
SYSTEM; MARYLAND-NATIONAL CAPITAL PARK
& PLANNING COMMISSION EMPLOYEES'
RETIREMENT SYSTEM; MIDWEST OPERATING
ENGINEERS PENSION TRUST FUND, Individually and
On Behalf of All Others Similarly Situated,

                Plaintiffs,

      v.

THORNBURG MORTGAGE SECURITIES TRUST
2006-3; THORNBURG MORTGAGE SECURITIES
TRUST 2006-5; THORNBURG MORTGAGE
SECURITIES TRUST 2007-4; GREENWICH CAPITAL
ACCEPTANCE, INC.; STRUCTURED ASSET
MORTGAGE INVESTMENTS II, INC.; CREDIT
SUISSE SECURITIES LLC, d/b/a CREDIT SUISSE
SECURITIES (USA) LLC; RBS SECURITIES INC.;
BANC OF AMERICA SECURITIES LLC; ROBERT J.
MCGINNIS; CAROL P. MATHIS; JOSEPH N. WALSH
III; JOHN C. ANDERSON; JAMES M. ESPOSITO;
JEFFREY L. VERSCHLEISER; MICHAEL B.
NIERENBERG; JEFFREY MAYER; THOMAS F.
MARANO; MOODY'S CORP.; MOODY'S INVESTORS
SERVICES, INC.; MCGRAW-HILL COMPANIES, INC.;
STANDARD & POOR'S RATINGS SERVICES; FITCH,
INC.; and FITCH RATINGS,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 1:09-cv-00300-JOB/RLP

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
OF DEFENDANTS GREENWICH CAPITAL ACCEPTANCE, INC.
(N/K/A RBS ACCEPTANCE INC.), STRUCTURED ASSET MORTGAGE
INVESTMENTS II, INC., CREDIT SUISSE SECURITIES (USA) LLC,
RBS SECURITIES INC. (F/K/A GREENWICH CAPITAL MARKETS, INC.),
ROBERT J. McGINNIS, CAROL P. MATHIS, JOSEPH N. WALSH III,
JOHN C. ANDERSON, JAMES M. ESPOSITO, JEFFREY VERSCHLEISER,
<u>MICHAEL B. NIERENBERG, JEFFREY MAYER, AND THOMAS F. MARANO</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 3

I.    PLAINTIFFS HAVE FAILED TO PLEAD AN
ACTIONABLE MISREPRESENTATION OR OMISSION ...................................... 3

    A.    Plaintiffs' Conclusory Allegations Relating To Underwriting
Standards And Loan Documentation Are Insufficient.................................... 3

    B.    Plaintiffs' Conclusory Allegations Relating
To Appraisals And LTV Ratios Are Insufficient............................................ 6

    C.    Plaintiffs Do Not Allege A Material
Number Of Non-Complying Loans ................................................................ 8

    D.    Plaintiffs Plead No Actionable Misrepresentation Relating
To The Mortgage Loans Because They Do Not Allege Any
Request, Much Less Failure, To Cure Non-Complying Loans ...................... 9

    E.    Plaintiffs' Conclusory Allegations Relating To The
Ratings Assigned To The Certificates Are Insufficient............................... 10

II.    PLAINTIFFS DO NOT PLEAD A COGNIZABLE ECONOMIC LOSS............... 11

    A.    Plaintiffs' Conclusory Assertions Are
Insufficient Under Any Theory Of Injury.................................................... 11

    B.    Plaintiffs' Own Allegations Affirmatively Demonstrate
That They Have No Recoverable Loss Relating To
Their Investment In 2006-5 Certificates ..................................................... 13

III.    PLAINTIFFS HAVE FAILED TO ALLEGE FACTS TO ESTABLISH
THEIR STANDING TO PURSUE A SECTION 12(a)(2) CLAIM ....................... 14

IV.    PLAINTIFFS DO NOT PLEAD RELIANCE ON ANY ALLEGED
MISREPRESENTATION IN THE 2006-5 OFFERING DOCUMENTS................ 17

V.    PLAINTIFFS' FEDERAL SECURITIES CLAIMS ARE TIME-BARRED........... 19

    A.    Plaintiffs Concede That The Amended Complaint
Does Not Plead Facts To Establish Their Compliance
With The One-Year Statute Of Limitations................................................. 19

# TABLE OF CONTENTS
## (Continued)

Page

B.     Plaintiffs' Claims Should Be Dismissed With Prejudice Because A Reasonable Investor Would Have Discovered The Facts Underlying Plaintiffs' Claims More Than One Year Prior To February 27, 2009 .......... 20

C.     Plaintiffs' Claims Relating To The 2006-3 And 2006-5 Offerings Also Should Be Dismissed With Prejudice Because *American Pipe* Tolling Does Not Apply To The One-Year Statute Of Limitations For Those Claims ............................. 23

D.     Plaintiffs' Claims Relating To The 2006-3 And 2006-5 Offerings Also Should Be Dismissed With Prejudice Because They Are Barred by The Three-Year Statute Of Repose ............... 25

VI.     PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM ......................... 26

A.     RBS .................................................................................................... 26

B.     Individual Defendants ...................................................................... 28

VII.     PLAINTIFFS' CLAIM UNDER THE NEW MEXICO SECURITIES ACT SHOULD BE DISMISSED ...................................... 29

CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Kinder-Morgan, Inc.*,
    340 F.3d 1083 (10th Cir. 2003) ........................................................................ 28

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ........................................................................................ 24

*Ames v. Uranus Inc.*,
    1993 WL 106896 (D. Kan. Mar. 17, 1993) ...................................................... 20

*Anixter v. Home-Stake Prod. Co.*,
    939 F.2d 1420 (10th Cir. 1991) ............................................................ 2, 20, 25

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
    476 F.3d 1261 (11th Cir. 2007) ...................................................................... 19

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .......................................................................... 1, 3, 5, 7

*Bath v. Bushkin, Gaims, Gaines & Jonas*,
    1988 U.S. Dist. LEXIS 18373 (D. Wyo. Apr. 22, 1988) .................................. 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 1

*Blackmoss Invs. v. ACA Capital Holdings*,
    2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .................................................... 13

*Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates*,
    748 F. Supp. 2d 1246 (W.D. Wash. 2010) .............................................. *passim*

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) .............................................................................. 7

*Caprin v. Simon Transp. Servs., Inc.*,
    99 F. App'x 150 (10th Cir. 2004) ........................................................ 21, 22, 23

*City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*,
    2010 U.S. Dist. LEXIS 137290 (E.D.N.Y. Dec. 23, 2010) ................................ 5

*Emps.' Ret. Sys. of the Gov't of the V.I. v. J.P. Morgan Chase & Co.*,
    2011 WL 1201520 (S.D.N.Y. Mar. 30, 2011) ......................................... *passim*

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Feiner v. SS&C Techs., Inc.*,
    47 F. Supp. 2d 250 (D. Conn. 1999)..................................................................... 16

*Flinn v. Petro-Lewis Corp.*,
    1985 WL 358 (D. Colo. Nov. 8, 1985)................................................................. 20

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
    __ F. Supp. 2d __, 2011 WL 907121 (S.D.N.Y. Mar. 16, 2011)........................... 25

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*,
    2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010)........................................................ 9

*Freedman v. Value Health, Inc.*,
    2000 WL 630916 (D. Conn. Mar. 24, 2000) ...................................................... 29

*Greene v. Horizon/CMS Healthcare Corp.*,
    1998 WL 2030956 (D.N.M. July 13, 1998)........................................................ 30

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
    665 F. Supp. 2d 404 (S.D.N.Y. 2009) .................................................................. 8

*In re Citigroup Inc. Bond Litig.*,
    723 F. Supp. 2d 568 (S.D.N.Y. 2010) ............................................................. 2, 16

*In re Countrywide Fin. Corp. Sec. Litig.*,
    2009 WL 7322254 (C.D. Cal. Dec. 9, 2009) ...................................................... 18

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) ................................................................ 18

*In re Enron Corp. Sec. Derivative & ERISA Litig.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2003) ................................................................ 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y. 2007) ......................................................................... 18

*In re IndyMac Mortgage-Backed Sec. Litig.*,
    718 F. Supp. 2d 495 (S.D.N.Y. 2010) ........................................................... *passim*

*In re Infonet Servs. Corp. Sec. Litig*,
    310 F. Supp. 2d 1106 (C.D. Cal. 2003) .............................................................. 20

*In re Lehman Bros. Sec. & ERISA Litig.*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010) ......................................................... 5, 11, 24

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Lehman Bros. Sec. & ERISA Litig.*,
  2011 WL 1453790 (S.D.N.Y. Apr. 13, 2011) ................................................. 25, 26

*In re Levi Strauss & Co. Sec. Litig.*,
  527 F. Supp. 2d 965 (N.D. Cal. 2007) ....................................................... 16

*In re State St. Bank and Trust Co. Fixed Income Funds Inv. Litig.*,
  __ F. Supp. 2d __, 2011 WL 1206070 (S.D.N.Y. Mar. 31, 2011) ........................ 13

*In re Thornburg*,
  2009 WL 5851089 (D.N.M. Dec. 21, 2009) ................................................ 21

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  683 F. Supp. 2d 1236 (D.N.M. 2010) ................................................ 22, 26, 28

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  695 F. Supp. 2d 1165 (D.N.M. 2010) ........................................... *passim*

*In re Wells Fargo Mortg. Backed Certificates Litig.*,
  712 F. Supp. 2d 958 (N.D. Cal. 2010) ......................................................... 5

In re *Wells Fargo Mortgage-Backed Certificates Litig.*,
  2010 WL 4117477 (N.D. Cal. Oct. 19, 2010) .............................................. 24

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996) ............................................................. 14, 15

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ...................................................... 18, 19

*Joseph v. Wiles*,
  223 F.3d 1155 (10th Cir. 2000) ....................................................... 19, 25

*Lane v. Page*,
  649 F. Supp. 2d 1256 (D.N.M. 2009) .............................................. 21, 27, 28

*Lillard v. Stockton*,
  267 F. Supp. 2d 1081 (N.D. Okla. 2003) ................................................ 20

*Lone Star Fund V (US), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ............................................................ 9, 10

*Maher v. Durango Metals, Inc.*,
  144 F.3d 1302 (10th Cir. 1998) .................................................... 14, 26, 27

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-0302 (C.D. Cal.) ............................................................. 15

*Malone v. Clark Nuber, P.S.*,
  2008 WL 4279502 (W.D. Wash. Sept. 12, 2008)................................... 29

*McDonald v. Kinder-Morgan, Inc.*,
  287 F.3d 992 (10th Cir. 2002) ............................................................... 8

*McMahan v. Wherehouse*,
  65 F.3d 1044 (2d Cir. 1995) ................................................................. 12

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  722 F. Supp. 2d 1157 (C.D. Cal. 2010) ........................................... 24, 25

*Me. State. Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 02:10-CV-0302 (C.D. Cal. May 5, 2011) ....................................... 14

*Merck & Co. v. Reynolds*,
  130 S. Ct. 1784 (2010).......................................................................... 21

*Miguel v. Country Funding Corp.*,
  309 F.3d 1161 (9th Cir. 2002) .............................................................. 26

*Miller v. Shell Oil*,
  345 F.2d 891 (10th Cir. 1965) .............................................................. 13

*Mobley v. McCormick*,
  40 F.3d 337 (10th Cir. 1994) ................................................................ 21

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010)................................. 12, 16

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010)............................. 5, 11, 27

*N.J. Carpenters v. DLJ*,
  2010 U.S. Dist. LEXIS 136142 (S.D.N.Y. Dec. 15, 2010) ..............24, 25

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  272 F.R.D. 160 (S.D.N.Y. 2011) .......................................................... 12

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
  743 F. Supp. 2d 288 (S.D.N.Y. 2010) .................................................. 12

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    632 F.3d 762 (1st Cir. 2011) ........................................................................ 3, 7, 11

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010) ................................................................16, 27

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
    2010 WL 4903619 (S.D.N.Y. Dec. 1, 2010) ......................................................26

*Pyramid Holdings, Inc. v. Inverness Med. Innovations, Inc.*,
    638 F. Supp. 2d 120 (D. Mass. 2009) ............................................................... 7

*Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*,
    707 F. Supp. 2d 702 (W.D. Ky. 2010) .............................................................. 6

*Sewell v. D'Alessandro & Woodyard, Inc.*,
    725 F. Supp. 2d 1344 (M.D. Fla. 2010) ............................................................ 21

*Shaw v. Digital Equip. Corp.*,
    82 F.3d 1194 (1st Cir. 1996) ......................................................................... 15

*Sloane Overseas v. Sapiens Int'l Corp.*,
    941 F. Supp. 1369 (S.D.N.Y. 1996) ................................................................. 27

*Spiegel v. Tenfold Corp.*,
    192 F. Supp. 2d 1261 (D. Utah 2002) .............................................................. 14

*Stack v. Lobo*,
    1995 WL 241448 (N.D. Cal. Apr. 20, 1995) ...................................................... 11

*Sterlin v. Biomune Sys.*,
    154 F.3d 1191 (10th Cir. 1998) ....................................................................... 21

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
    692 F. Supp. 2d 387 (S.D.N.Y. 2010) ........................................................... 5, 8, 11

*U.S. v. Botefuhr*,
    309 F.3d 1263 (10th Cir. 2002) ....................................................................... 29

*Young v. U.S.*,
    535 U.S. 43 (2002) ...................................................................................... 25

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

### Rules, Regulations, And Statutes

15 U.S.C. § 77k ................................................................................................ *passim*

15 U.S.C. § 77k(a) ...................................................................................................... 17

15 U.S.C. § 77l(a)(2) ...................................................................................... *passim*

15 U.S.C. § 77m ........................................................................................... 2, 19, 20

17 C.F.R. § 230.158(a)(1)(i) ..................................................................................... 18

17 C.F.R. § 230.158(b) ............................................................................................. 17

17 C.F.R. § 230.436(g)(1) ......................................................................................... 10

28 U.S.C. 1658(b)(1) ................................................................................................ 21

Fed. R. Civ. P. 8 ......................................................................................................... 3

NMSA 1978, § 58-13B-30 (1986) ............................................................................ 29

### Other Authorities

*Asset-Backed Securities*, Securities Act Release No. 33-8518,
   70 Fed. Reg. 1506 (Jan. 7, 2005) ........................................................................ 18

Hazen, Thomas Lee, The Law of Securities Regulation § 7.3[4] (6th ed. 2009) ......... 19

## INTRODUCTION

Plaintiffs' opposition confirms that the Amended Complaint is the type of fact-free pleading that the Supreme Court found inadequate in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

*First*, Plaintiffs do not dispute that the Amended Complaint fails to identify even a single loan from the challenged offerings in which an underwriting standard was not followed, the loan documentation was inaccurate, an inflated appraisal was used, or a LTV ratio was misstated. Instead, Plaintiffs embrace its failure to do so and proclaim that their conclusory assertion of "widespread abandonment" of underwriting standards is sufficient.  Plaintiffs' Brief ("Ps' Br.") at 12 (Dkt. 140).  The very cases on which Plaintiffs rely, however, confirm that, to survive dismissal, there must be allegations of *facts* from *sources* to create a *nexus* between allegations of underwriting abandonment and the loans underlying the mortgage pass-through certificates. The Amended Complaint is devoid of any such well-pled facts to create the requisite nexus.

*Second*, Plaintiffs fail to identify any facts in the Amended Complaint regarding the secondary market value of the certificates to support even their own flawed theory of injury based on "market value decline."  Moreover, Plaintiffs do not dispute that they have received *all* of the promised payments on their certificates and that courts in MBS cases have held that an alleged diminution in market value is insufficient where, as here, the offering documents expressly disclaimed any secondary market.

*Third*, though both the Tenth Circuit and this Court have made clear that a plaintiff must allege facts to establish its Section 12(a)(2) standing, Plaintiffs concede that the Amended Complaint does not allege "facts establishing any of the defendants' 'direct and active'

solicitation in connection with the 'immediate sale' of certificates to Plaintiffs." Ps' Br. at 37. Instead, Plaintiffs rely on the generalized allegation that "the § 12(a)(2) claim is brought . . . on behalf of the plaintiffs and all members of the Class who purchased or otherwise acquired the Certificates pursuant to the Offering Documents." *Id*. at 35. Plaintiffs' own authority confirms that this "cursory allegation . . . is, by its terms, insufficient." *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 585 (S.D.N.Y. 2010) (Ps' Br. at 62).

*Fourth*, Plaintiffs do not dispute that the Amended Complaint fails to plead their reliance on any alleged misrepresentation in the 2006-5 Offering Documents. Because Plaintiffs purchased their 2006-5 certificates more than one year after the 2006-5 offering, no statutory presumption of reliance applies. Thus, Plaintiffs' failure to plead reliance is fatal to their claim.

*Fifth*, Plaintiffs' assertion that "none of the authorities requiring plaintiffs to affirmatively plead compliance with the statute of limitations are binding on this court" (Ps' Br. at 48) ignores the Tenth Circuit's plain holding nearly *twenty years ago* that "[t]o comply with Section 13, the plaintiff must plead and prove facts showing that his claim was timely with respect to both the one year and three year limitation periods." *Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1434 (10th Cir. 1991), *vacated on other grounds sub nom.*, *Denner v. Trippet*, 503 U.S. 978 (1992). Moreover, because the allegations upon which the original complaint was filed were widespread within the public domain well over one year prior to its filing, Plaintiffs' federal securities claims should be dismissed with prejudice.

*Sixth*, Plaintiffs scrupulously avoid any allegation that they purchased, or were offered, certificates in New Mexico. Thus, Plaintiffs have failed to plead a claim within the scope of the New Mexico Securities Act.

## ARGUMENT

I.  **PLAINTIFFS HAVE FAILED TO PLEAD AN
    ACTIONABLE MISREPRESENTATION OR OMISSION**

The Supreme Court has made clear that "Rule 8 . . . does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient *factual matter* . . .

to state a claim to relief that is plausible on its face." *Id.* at 1949 (emphasis supplied). Thus, a

complaint is insufficient "if it tenders naked assertions devoid of further *factual enhancement*."

*Id.* (emphasis supplied).

Consistent with the Supreme Court's requirement that plaintiffs plead "factual matter,"

courts in MBS cases have looked at whether there are factual allegations based on "substantial

sources, including statements from confidential witnesses, former employees and internal e-

mails" (*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632

F.3d 762, 773 (1st Cir. 2011)) that "create a sufficient nexus between the alleged underwriting

standard abandonment and the loans underlying the Certificates." *In re IndyMac Mortgage-

Backed Sec. Litig.*, 718 F. Supp. 2d 495, 510 (S.D.N.Y. 2010). Plaintiffs' Amended Complaint is

devoid of such "well-pleaded factual allegations." *Iqbal*, 129 S. Ct. at 1950.

A.  **Plaintiffs' Conclusory Allegations Relating To Underwriting
    Standards And Loan Documentation Are Insufficient**

Plaintiffs' opposition fails to identify any facts concerning the underlying loans in the

mortgage pools originated by Thornburg. Instead, Plaintiffs revert to their conclusory assertion

that there was "widespread abandonment of Thornburg's underwriting standards" and falsely

claim that the bulk of the underlying loans in the mortgage pools were originated by Thornburg.

Ps' Br. at 12-13.  The Offering Documents plainly disclosed that the vast majority of the

underlying loans were originated by "correspondent lenders."[1]  In an attempt to contrive a claim,

however, Plaintiffs resort to mischaracterizing the number of loans originated by Thornburg (*id.*

at 12) as the sum of the loans originated by both Thornburg and the "correspondent lenders":

| Thornburg And Correspondent Combined (Cited By Plaintiffs) | Thornburg and Correspondent Separated (Cited By Defendants) |
| --- | --- |
| "Approximately 82.64% and 12.24% of the mortgage loans were originated by Thornburg Mortgage Home Loans, Inc. (together with its correspondent lenders other than First Republic Bank) and First Republic Bank, respectively." 2006-3 Pro Supp. at S-7 (Robbins Decl. Ex. 6). | "Of the mortgage loans in this securitization, 95.82% were acquired from correspondents and 4.18% were originated by the seller [Thornburg] through its retail operations." 2006-3 Pro Supp. at S-96 (Ex. A). |

The reason Plaintiffs try to mislead the Court is that the Amended Complaint contains no

factual allegations regarding correspondent lenders such as Luxury Mortgage, Manhattan

Mortgage, First Republic, Metrocities Mortgage, Countrywide, or IndyMac, much less any

"well-pleaded factual allegations" to support Plaintiffs' conclusory assertion that Thornburg did

not conduct "adequate quality control reviews" of loans acquired from the correspondent lenders.

(¶ 54(c)).  Nor is there any factual allegation in the Amended Complaint regarding how any loan

originated by Thornburg was originated "without due regard to borrowers' ability to repay" or

based on loan documentation that was "falsified."  Ps' Br. at 15, 19.  Moreover, Plaintiffs do not

reference *any* sources for their conclusory assertions.  Instead, Plaintiffs rest entirely on their

unilateral assertion that there was "widespread abandonment of Thornburg's underwriting

---

[1]  *See* 2006-3 Pro Supp. at S-96 (Ex. A); 2006-5 Pro Supp. at S-30 (Ex. B); 2007-4 Pro Supp. at S-31 (Ex. C).  All references in the form (Ex. __) are to the exhibits attached to the motion to dismiss filed by the defendants herein (Dkt. 125).

standards." *Id.* at 12. "[T]he Federal Rules do not require courts to credit a complaint's

conclusory statements without reference to its factual context." *Iqbal*, 129 S. Ct. at 1954.

Plaintiffs' assertion that "numerous courts have upheld allegations of widespread and

systematic abandonment" (Ps' Br. at 9) ignores that in each of the cases they cite there were

allegations of *facts* from *sources* to create a *nexus* between the alleged abandonment and the

loans underlying the certificates:

> *Emps.' Ret. Sys. of the Gov't of the V.I. v. J.P. Morgan Chase & Co.*, 2011 WL
> 1201520 (S.D.N.Y. Mar. 30, 2011). The plaintiff reviewed 60 loans from the
> mortgage pool at issue and identified "particular loans that it claims were wrongly
> made." *Id.* at *5, 11. *See also City of Ann Arbor Emps.' Ret. Sys. v. Citigroup
> Mortg. Loan Trust Inc.*, 2010 U.S. Dist. LEXIS 137290, at *8 (E.D.N.Y. Dec. 23,
> 2010) (plaintiffs "conducted a review of the documentation underlying 64 loans
> backing the AR5 Trust, and 72 loans backing the WFHE2 Trust").

> *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387
> (S.D.N.Y. 2010). The court found the plaintiffs had alleged a "sufficient nexus"
> because "the percentage of defaulting loans [in the mortgage pool] rose
> dramatically shortly after the Certificates were issued." *Id.* at 392. *See also In re
> Lehman Bros. Sec. & ERISA Litig.*, 684 F. Supp. 2d 485, 493 (S.D.N.Y. 2010)
> (same); *IndyMac MBS*, 718 F. Supp. 2d at 510 (same).

> *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 2010 WL 1257528
> (S.D.N.Y. Mar. 31, 2010). The court found that the plaintiffs had alleged a
> sufficient "link" because of a "default rate spike" in the mortgage pool at issue and
> factual allegations sourced to the FTC, West Virginia Attorney General and "a
> former HFN employee." *Id.* at *6. *See also In re Wells Fargo Mortg. Backed
> Certificates Litig.*, 712 F. Supp. 2d 958, 972 (N.D. Cal. 2010) (factual allegations
> based "heavily on the statements of confidential witnesses").

Plaintiffs' Amended Complaint here is devoid of well-pled *facts* from *sources* to create a

*nexus* between the alleged "abandonment of Thornburg's underwriting standards" (Ps' Br. at 12)

and the loans underlying the certificates.

Plaintiffs' conclusory claims relating to the loans originated by Wells Fargo in the 2006-5

mortgage pool are equally deficient. Plaintiffs do not dispute that the 2006-5 Offering

Documents disclosed that Wells Fargo had implemented an initiative to encourage loan personnel to "aggressively" grant underwriting exceptions and that "[t]here can be no assurance that the successful implementation of this initiative will not result in an increase in the incidence of delinquencies and foreclosures."  2006-5 Pro Supp. at S-40 (Ex. B).  Thus, contrary to Plaintiffs' allegations (¶ 51(e)), the Offering Documents fully disclosed that Wells Fargo had "formalized the practice" of aggressive underwriting exceptions.

Plaintiffs also do not dispute that the aggregate amount of the 2506 loans originated by Wells Fargo in the 2006-5 loan pool was *less than 1%* of the loans originated by Wells Fargo in 2005 and 2006 (Exs. K-L), and that the percentage of defaulting loans in the 2006-5 loan pool did not "rise dramatically" in late 2006 "shortly after" the 2006-5 certificates were issued in August 2006.  Thus, unlike in *Tsereteli MBS* and *RALI MBS*, there is no factual allegation creating a "nexus" or "link" between the alleged deviation from underwriting guidelines by Wells Fargo and the loans underlying the 2006-5 certificates.  *See also Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*, 707 F. Supp. 2d 702, 712 (W.D. Ky. 2010) (dismissing underwriting standard allegations because "the complaint contains no allegations on this subject that are in any way specific to the loans and securities involved in this case").

### B.    Plaintiffs' Conclusory Allegations Relating To Appraisals And LTV Ratios Are Insufficient

Plaintiffs conclusory allegations relating to "inflated appraisals," and LTV ratios "based on the false and artificially inflated appraisals" (Ps' Br. at 18), are also insufficient.

Plaintiffs do not provide a single example of a loan originated by Thornburg based on an "inflated appraisal" and do not identify *any* source for their conclusory assertion that Thornburg "used inflated appraisals" (¶ 58), much less "substantial sources, including statements from

6

confidential witnesses, former employees and internal e-mails."  *Nomura MBS*, 632 F.3d at 773.

Plaintiffs' Amended Complaint thus stands in stark contrast to the pleading in *J.P. Morgan*,

which alleged that "24 out of 60 loans [in the mortgage pool] reviewed by the plaintiff

overvalued the subject property by 9% or more."  2011 WL 1201520, at *5.

 Moreover, there are literally *no* allegations in the Amended Complaint regarding the

appraisers who issued the appraisals used by Thornburg to provide any "factual content" (*Iqbal*,

129 S. Ct. at 1949) for Plaintiffs' conclusory assertion that "appraisers did not subjectively

believe in their appraisals."  Ps' Br. at 16.  *See Boilermakers Nat'l Annuity Trust Fund v. WaMu*

*Mortg. Pass Through Certificates*, 748 F. Supp. 2d 1246, 1256 (W.D. Wash. 2010) ("Plaintiffs

have not substantiated their conclusory allegations with facts suggesting a viable claim.  The

appraisal and coordinate LTV ratio allegations must be dismissed.").

 Plaintiffs also do not provide a single example of a loan originated by Wells Fargo in the

2006-5 mortgage pool that was based on an "inflated appraisal."  Instead, Plaintiffs purport to

rely on alleged instances of Wells Fargo "pressure" on appraisers from unspecified sources in an

unspecified time period (¶¶ 58-61)[2] that are untethered to the loans in the 2006-5 mortgage

---

[2]  *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 148 (3d Cir. 2004) (affirming
dismissal because plaintiffs failed to allege "when any of [the confidential sources] were
employed by [defendant,] . . . the dates that these sources acquired the information they
purportedly possess, or how any of these former employees had access to such information");
*Pyramid Holdings, Inc. v. Inverness Med. Innovations, Inc.*, 638 F. Supp. 2d 120, 128 (D. Mass.
2009) ("None of the information provided [by confidential witnesses] gives sufficient context for
its true meaning or impact to be discernible . . . .  Lead Plaintiff must provide more than 'tales
from the trenches.'").

pool.[3]  That is insufficient.  *See Tsereteli MBS*, 692 F. Supp. 2d at 393-94 (rejecting appraisal allegations based on Office of Inspector General report because it "does [not] contain any suggestion that the loans the OIG examined were in the pools underlying the Certificates").

What Plaintiffs must plead, but do not plead, are *facts* from *sources* to create a *nexus* between their alleged instances of "inflated appraisals" and the loans underlying the 2006-5 certificates.  *IndyMac MBS*, 718 F. Supp. 2d at 510 (rejecting "bald allegations" that "sales personnel and account executives 'would pressure' appraisers to appraise properties at artificially high levels" because they contained "insufficient factual amplification to support a plausible inference that the appraisers of the properties underlying the Certificates were subjected to pressure or that they succumbed to it").

### C.        Plaintiffs Do Not Allege A Material Number Of Non-Complying Loans

Because they do not identify, even roughly, the number or volume of loans in any of the 2006-3, 2006-5, or 2007-4 mortgage pools that allegedly did not comply with their disclosed characteristics, Plaintiffs also have failed to adequately plead the materiality of any alleged misstatement in the Offering Documents.  *See In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 416 (S.D.N.Y. 2009) (dismissing Securities Act claims because "the Complaint specifies only one FFA [out of 37 FFAs] as being inconsistent with its characterization of Brittania's disclosures"); *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002) (affirming dismissal for failure to plead materiality of alleged omissions).

---

[3]  By contrast, in *J.P. Morgan*, "the Second Amended Complaint include[d] specific, concrete factual allegations" based on "appraisers who . . . were told by mortgage brokers what home values to provide and did, in fact, provide inflated appraisals."  2011 WL 1201520, at *9.

The failure to plead facts showing a material number of non-complying loans is particularly glaring here because, even if Plaintiffs had alleged "well-pleaded factual allegations" to support their conclusory assertion of underwriting abandonment (and they have not), the vast majority of the loans in the loan pools were *not* originated by Thornburg,[4] and Wells Fargo is only alleged to have originated loans in the 2006-5 mortgage pool.  (¶ 48).

### D.   Plaintiffs Plead No Actionable Misrepresentation Relating To The Mortgage Loans Because They Do Not Allege Any Request, Much Less Failure, To Cure Non-Complying Loans

Plaintiffs also fail to plead any actionable misrepresentation relating to the mortgage loans because they never requested the cure of any non-complying loans.  *See* Ps' Br. at 22-25. *Lone Star Fund V (US), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010) did not hold that a "repurchase or substitute" provision "preempts plaintiffs' ability to bring claims under the Securities Act."  Ps' Br. at 25.  *See Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *15-16 (S.D.N.Y. Sept. 28, 2010) (rejecting plaintiffs' argument that holding in *Lone Star* violates anti-waiver provisions).  Rather, *Lone Star* held that a "repurchase or substitute" provision is itself part of the representations concerning the mortgage loans and that, taken together with the other loan-related representations, the provision disclosed that the loans either comply or would be made to comply upon a request to repurchase or substitute:

> Read as a whole, the prospectuses and warranties provide that the mortgages *should be* non-delinquent, but if some mortgages were delinquent then Barclays would either repurchase them or substitute performing mortgages into the trusts. . . .

---

[4]   *See* 2006-3 Pro Supp. at S-96 (Ex. A) (4.18% of loans originated by Thornburg); 2006-5 Pro Supp. at S-30 (Ex. B) (1.53% originated by Thornburg); 2007-4 Pro Supp. at S-31 (Ex. C) (26.09% originated by Thornburg).

> Rather than waive Appellants' rights to pursue claims [for securities law violations], the "repurchase or substitute" clauses change the nature of [the offering documents'] representation. If Appellants had alleged that Barclays falsely represented to prospective investors that it would repurchase or substitute delinquent mortgages, they might have stated a case of fraud under the pertinent agreements. This is not their claim.

*Lone Star*, 594 F.3d at 389-90 (emphasis in original).

The "repurchase or substitute" provisions here apply to the representations and warranties about which Plaintiffs complain. 2006-3 Pro Supp. at S-121 to S-122 (Ex. A); 2006-5 Pro Supp. at S-65 to S-66 (Ex. B); 2007-4 Pro Supp. at S-59 to S-60 (Ex. C). Because Plaintiffs have never requested the cure of any non-complying loans, much less alleged the failure to cure a loan identified as non-complying, Plaintiffs have failed to allege a misrepresentation relating to the mortgage loans. *See Lone Star*, 594 F.3d at 389-90.[5]

### E.   Plaintiffs' Conclusory Allegations Relating To The Ratings Assigned To The Certificates Are Insufficient

Plaintiffs erroneously assert that credit ratings are considered part of the "registration statement" under the Securities Act. Ps' Br. at 21-22. SEC Rule 436(g)(1) could not be clearer: "[T]he security rating assigned . . . shall not be considered a part of the registration statement prepared or certified by a person within the meaning of sections 7 and 11 of the [Securities] Act." 17 C.F.R. § 230.436(g)(1). Because the credit ratings assigned to the certificates "shall

---

[5]   The "repurchase or substitute" remedy is *not* limited to holders of 25% of the interests in a trust. Ps' Br. at 25 n.12. The provision Plaintiffs cite relates to the conditions under which certificate holders may institute proceedings with respect to an "event of default." *See* 2006-3 Prospectus at 114-15 (Robbins Decl. Ex. 6). The types of breach of representations and warranties that trigger the "repurchase or substitute" provision are not enumerated "events of default." There is no provision in the Offering Documents precluding Plaintiffs from requesting the cure of non-complying loans. Plaintiffs' reliance on *J.P. Morgan* (Ps' Br. at 25) is thus misplaced.

not be considered a part of the registration statement," Plaintiffs have no claim based on their

conclusory assertion that the "ratings were false."  Ps' Br. at 22.[6]

Moreover, Plaintiffs do not dispute that "ratings are opinions" and that opinions only can

be actionable "if not truly held . . . when issued."  *IndyMac MBS*, 718 F. Supp. 2d at 512.  Thus,

hindsight statements by former rating agency employees allegedly "describing defects in the

models and methods" for unidentified transactions (Ps' Br. at 20) are insufficient to state a claim:

> The complaint includes acknowledgments from S&P and Moody's executives
> conceding, in hindsight, that the models and data that the rating agencies were using
> were deficient.  But the ratings were not false or misleading because rating agencies
> should have been using better methods and data.  Defendants are not liable under the
> securities laws . . . because they could have formed "better" opinions.

*Nomura MBS*, 632 F.3d at 775 (affirming dismissal of ratings claims).

The same rating agency allegations that Plaintiffs advance here have been repeatedly

rejected by courts in MBS cases.  This Court should do the same.  *Id.* at 774-75; *WaMu MBS*,

748 F. Supp. 2d at 1256; *IndyMac MBS*, 718 F. Supp. 2d at 511-12; *Lehman MBS*, 684 F. Supp.

2d at 492-93; *Tsereteli MBS*, 692 F. Supp. 2d at 394-95; *RALI MBS*, 2010 WL 1257528, at *6-7.

## II.      PLAINTIFFS DO NOT PLEAD A COGNIZABLE ECONOMIC LOSS

### A.      Plaintiffs' Conclusory Assertions Are
### Insufficient Under Any Theory Of Injury

Plaintiffs aver that "factual allegations regarding the Certificates' decline in value are all

that is required at the pleading stage [to] state a cognizable injury" (Ps' Br. at 31), but do not

identify any facts to support their conclusory assertion that "the Certificates have suffered a

---

[6]  Plaintiffs' reliance on cases involving state law claims is misplaced.  *See* Ps' Br. at 22 n.10.
"Section 11 imposes liability only for misrepresentations or omissions contained in 'registration
statements.'"  *Stack v. Lobo*, 1995 WL 241448, at *11 (N.D. Cal. Apr. 20, 1995) (quoting 15
U.S.C. § 77k).

decline in value." *Id.* at 27.  Indeed, the Amended Complaint is conspicuously devoid of any

facts regarding the secondary market value of the certificates as of the filing of this lawsuit on

February 27, 2009.  Instead, Plaintiffs conclusorily assert that the certificates "declined

significantly in price."[7]  (¶ 79).  By contrast, the plaintiffs in *N.J. Carpenters Health Fund v.*

*DLJ Mortg. Capital, Inc.*, 2010 WL 1473288, at *5 (S.D.N.Y. Mar. 29, 2010) (Ps' Br. at 30)

identified a "79% diminution of market value."  Plaintiffs thus fail to adequately allege facts to

support even their own flawed theory of injury:

> Even assuming, *arguendo*, that a decline in market price could provide factual
> support for the contention that the Certificates have declined in value, the
> complaint lacks any factual enhancement of the bare assertion that a secondary
> market for their Certificates actually exists. . . . The complaint also fails in turn to
> allege any facts regarding the actual market price for the Certificates at the time of
> suit.  Thus, even if [Plaintiff] could raise a cognizable injury by claiming a decline
> in market price, it has failed to provide factual enhancement of that assertion.

*NECA-IBEW v. Goldman, Sachs & Co.*, 743 F. Supp. 2d 288, 292 (S.D.N.Y. 2010).[8]

---

[7]  Plaintiffs' own authority confirms that "[t]he value of a security may not be equivalent to its
market price."  *McMahan v. Wherehouse*, 65 F.3d 1044, 1049 (2d Cir. 1995) (Ps' Br. at 26).

[8]  Plaintiffs do not dispute that (i) they have received *all* of the promised payments on their
certificates; (ii) the Offering Documents expressly disclaimed that any secondary market for the
certificates existed or would exist in the future; and (iii) the Offering Documents further warned
that "you may not be able to sell your certificates readily or at prices that will enable you to
realize your desired yield."  2006-3 Pro Supp. at S-28 (Ex. A); 2006-5 Pro Supp. at S-21 (Ex. B);
2007-4 Pro Supp. at S-21 (Ex. C).  Relying on cases involving traditional corporate securities that
traded on open and developed markets, Plaintiffs claim that "liquidity warnings do not prevent a
plaintiff from pleading a cognizable injury under § 11 where they allege a decline in the value of
the securities." Ps' Br. at 31.  As courts in cases involving illiquid MBS have made clear,
however, an alleged diminution in the secondary market value of a mortgage pass-through
certificate is insufficient where, as here, the offering documents expressly disclaimed any
secondary market.  *See NECA-IBEW*, 743 F. Supp. 2d at 292 ("Because NECA made an
investment that it knew might not be liquid, it may not allege an injury based upon the
hypothetical price of the Certificates on a secondary market at the time of suit."); *N.J. Carpenters*
*Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 166 (S.D.N.Y. 2011) ("In some
situations, section 12(a)(2) damages can be sufficiently alleged based on market value decline.
That is not so where the injured party was warned in advance.").

**B.     Plaintiffs' Own Allegations Affirmatively Demonstrate That They Have
<u>No Recoverable Loss Relating To Their Investment In 2006-5 Certificates</u>**

Plaintiffs' own allegations affirmatively demonstrate that they have no recoverable loss
relating to their investment in 2006-5 certificates.  Plaintiffs contend that the value of their
certificates declined following ratings downgrades (¶ 79), but Midwest Operating sold its 2006-5
certificates on January 16, 2008, *before* any alleged rating downgrade.  (Dkt. 1, Ex. A ¶¶ 78-82;
Dkt. 56, Ex. B).  Thus, "the absence of loss causation is apparent on the face of the complaint."
*Blackmoss Invs. v. ACA Capital Holdings*, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010).

Plaintiffs' only response is that, because the absence of loss causation is an affirmative
defense, "a plaintiff asserting claims for a violation of § 11 need not allege loss causation."  Ps'
Br. at 28.  The Tenth Circuit, however, has made clear that "[u]nder Rule 12(b), F.R.Civ.P., a
defendant may raise an affirmative defense by a motion to dismiss for the failure to state a
claim.  If the defense appears plainly on the face of the complaint itself, the motion may be
disposed of under th[e] rule."  *Miller v. Shell Oil*, 345 F.2d 891, 893 (10th Cir. 1965).  *See also
Bath v. Bushkin, Gaims, Gaines & Jonas*, 1988 U.S. Dist. LEXIS 18373, at *22 n.4 (D. Wyo.
Apr. 22, 1988) (same).

Because the absence of loss causation is clear from the face of the Amended Complaint,
Plaintiffs' claims relating to the 2006-5 certificates must be dismissed.  *See In re State St. Bank
and Trust Co. Fixed Income Funds Inv. Litig.*, __ F. Supp. 2d __, 2011 WL 1206070, at *3-10
(S.D.N.Y. Mar. 31, 2011) (dismissing Securities Act claims because "it is apparent on the face of
the complaint that the alleged loss is not causally connected to the misrepresentations").

### III.   PLAINTIFFS HAVE FAILED TO ALLEGE FACTS TO ESTABLISH THEIR STANDING TO PURSUE A SECTION 12(a)(2) CLAIM

Plaintiffs have asserted a Section 12(a)(2) claim against all 18 defendants (¶¶ 108-18), but contend that they need not allege "facts establishing any of the defendants' 'direct and active' solicitation in connection with the 'immediate sale' of certificates to Plaintiffs."  Ps' Br. at 37.[9]  That is not the law, as both the Tenth Circuit and this Court have made clear.  *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1307 (10th Cir. 1998) ("Maher must at a minimum allege *facts* indicating that COM and Fraser solicited his purchase of Durango stock.") (emphasis supplied); *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1220 (D.N.M. 2010) ("*Thornburg II*") ("The Plaintiffs have alleged no *facts* showing solicitation in this case. . . . The Plaintiffs have therefore failed to state a cause of action under Section 12(a)(2) against the Defendants.") (emphasis supplied); *Spiegel v. Tenfold Corp.*, 192 F. Supp. 2d 1261, 1269 (D. Utah 2002) ("Plaintiffs must allege *facts* that support the conclusion that the individual Defendants solicited the purchases.") (emphasis supplied).[10]

---

[9]   Plaintiffs have alleged purchases of certificates from 6 of the 20 tranches issued in the 2006-3, 2006-5, and 2007-4 offerings (Dkt. 56, Ex. B), but do not allege facts to establish their standing to pursue a Section 12(a)(2) claim relating to those purchases.  Plaintiffs also lack standing to pursue a Section 11 or Section 12(a)(2) claim for the 14 tranches of certificates that they concededly did not purchase because "the plain text of the Securities Act dictates that Plaintiffs must have acquired or purchased the security on which they sue."  Order at 4-16, *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 (C.D. Cal. May 5, 2011) (attached hereto as Exhibit 1) (holding, after "careful consideration" of the Securities Act and the distinguishing characteristics of mortgage pass-through certificates, that plaintiffs in MBS cases "must establish they have tranche-based standing").  *See also* Ds' Opening Br. at 6 n.5 (Dkt. 126).

[10]   Similarly, in *In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996) (Ps' Br. at 36-37), the Third Circuit stated:  "An allegation of direct and active participation in the solicitation of the immediate sale is necessary for solicitation liability, *i.e.*, where the section 12(2) defendant is not a direct seller.  Such an allegation is crucial so as to ensure a direct relationship between the purchaser and the defendant, without which a defendant is simply not a statutory seller."  *Id.* at 717 n.19.  Plaintiffs mistakenly rely on *Westinghouse*.  There, "the first amended complaint

Rather than allege facts showing each defendant's "direct and active" solicitation of their purchases, Plaintiffs lump all 18 defendants together and conclusorily assert that the defendants "orchestrated all activities necessary to effect the sale of the Certificates to the investing public." Ps' Br. at 36.  That is insufficient:

> The factual allegations in the complaint . . . all pertain to those defendants' involvement in preparing the registration statement, prospectus, and other "activities necessary to effect the sale of the securities to the investing public." Under *Pinter*, however, neither involvement in preparation of a registration statement or prospectus nor participation in "activities" relating to the sale of securities, standing alone, demonstrates the kind of *relationship between defendant and plaintiff* that could establish statutory seller status.

*Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996) (emphasis in original).  *See also Thornburg II*, 695 F. Supp. 2d at 1220 ("The fact that the individual Defendants created the offering documents . . . does not constitute 'direct and active' solicitation of the 'immediate sale' that Section 12(a)(2) liability requires.").[11]

As a fallback, Plaintiffs argue that they need not allege facts showing each defendant's "direct and active" solicitation of their purchases because "the Complaint clearly states that the § 12(a)(2) claim 'is brought . . . on behalf of the plaintiffs and all members of the Class who purchased or otherwise acquired the Certificates pursuant to the Offering Documents.'"  Ps' Br. at 35.  Plaintiffs' own case refutes their argument:

---

allege[d] that . . . each plaintiff purchased Westinghouse securities *directly* from an underwriter defendant."  *Id.* at 718.  Here, Plaintiffs Maryland National and Midwest Operating do not allege that they purchased their certificates "directly" from any defendant, much less all 18 defendants.

[11] Plaintiffs' conclusory assertion that defendants "promoted the sale of the Certificates . . . for their own financial benefit" (P's Br. at 35) adds nothing:  "[T]he Second Amended Complaint only states that [defendants] 'promoted and sold the Certificates to [the plaintiff]' and 'solicited sales of the Certificates for financial gain.'  These are conclusory legal allegations unsupported by any factual allegations. . . . Accordingly, the plaintiff's claims under Section 12(a)(2) are dismissed." *J.P. Morgan*, 2011 WL 1201520, at *7.

> The complaint and attached exhibits fail to clearly identify . . . *from whom* plaintiffs bought those securities.  Nor does the complaint expressly allege that plaintiffs purchased their securities directly from defendants.  Plaintiffs['] sole, cursory allegation – that plaintiffs "purchased or otherwise acquired bond class securities in the Offerings pursuant to the materially untrue and misleading Shelf Registration Statements" – is, by its terms, insufficient because it concedes the possibility that some or all plaintiffs "otherwise acquired" bond securities. . . . For a complaint to plausibly plead standing to raise a claim pursuant to Section 12, it must identify a particular purchase from a particular defendant pursuant to a particular prospectus that it contends contained a particular false or misleading statement.[12]

*Citigroup*, 723 F. Supp. 2d at 585 (Ps' Br. at 62).[13]

This is not a mere "technical defect."  Ps' Br. at 39.  Plaintiffs concede, for example, that they "otherwise acquired" their only 2006-5 certificates in October 2007, or well over a year after the public offering of 2006-5 certificates in August 2006.  Plaintiffs therefore have no Section 12(a)(2) claim against any defendant relating to the 2006-5 certificates.  *See J.P. Morgan*, 2011 WL 1201520, at *7 (dismissing plaintiff's Section 12(a)(2) claim because "its first purchase came nearly a full year after the 2007-S3 Certificates were first offered").[14]

---

[12] Plaintiffs indiscriminately assert a Section 12(a)(2) claim against all 18 defendants, but fail to identify even one defendant from whom they purchased certificates.  By contrast, the plaintiffs in *IndyMac MBS* alleged that they "purchased a specified number of Certificates on specified dates" at "specified prices" from "specific Underwriter Defendants" that they "associated with each individual offering."  718 F. Supp. 2d at 502.

[13] *See also Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 714 F. Supp. 2d 475, 484 (S.D.N.Y. 2010) (allegation that "plaintiffs and other Class members purchased or otherwise acquired Certificates pursuant and/or traceable to the defective Prospectus Supplements" is "insufficient to allege standing for purposes of a Section 12(a)(2) claim"); *DLJ*, 2010 WL 1473288, at *4 (same).

[14] Because Plaintiffs purchased their 2006-5 certificates more than a year after the initial offering, *Feiner v. SS&C Techs., Inc.*, 47 F. Supp. 2d 250 (D. Conn. 1999) (Ps' Br. at 38-39) has no application here.  "*Feiner* . . . did not hold that § 12(a)(2) applies to all aftermarket transactions so long as the transaction is traceable to the public offering. . . . [T]he court held that § 12(a)(2) liability is coextensive with the prospectus-delivery requirements set forth in § 4(3) . . . This period is generally forty days. . . ."  *In re Levi Strauss Sec. Litig.*, 527 F. Supp. 2d 965, 983 (N.D. Cal. 2007).  Moreover, *Feiner* is "inconsistent" with "the majority of the cases" that hold that Section 12(a)(2) "does not extend to *any* after market transactions."  *Id.* (emphasis in original).

Because Plaintiffs have failed to allege facts showing any defendant's "direct and active" solicitation in connection with the "immediate sale" of their certificates, Plaintiffs' Section 12(a)(2) claim must be dismissed.  *See Thornburg II*, 695 F. Supp. 2d at 1220.

## IV. PLAINTIFFS DO NOT PLEAD RELIANCE ON ANY ALLEGED MISREPRESENTATION IN THE 2006-5 OFFERING DOCUMENTS

Plaintiffs do not dispute that the Amended Complaint fails to plead their reliance on any alleged misrepresentation in the 2006-5 Offering Documents and that Section 11's statutory presumption of reliance does not apply to investors who purchase after an earning statement covering a 12-month period has been made available.  15 U.S.C. § 77k(a).  Instead, Plaintiffs proffer three theories as to why they need not plead reliance.  Each is unavailing.

*First*, Plaintiffs' argument that the April 2007 Form 10-K for the 2006-5 trust "only covered a period of four months" and that "defendants only filed their Form 10-Ds for a period of four months" (Ps' Br. at 42-43) is a straw man.  Defendants never argued that Plaintiffs had to plead reliance because of the Form 10-K or Form 10-Ds.  Rather, Defendants argued that "[f]or asset-backed securities, monthly distribution reports that are publicly available for Thornburg MBS are the equivalent of earnings statements typically field by corporate entities."  Ds' Br. at 38 (Dkt. 126).  An "earning statement" need not be filed with the SEC if it is otherwise made "generally available to . . . security holders."  17 C.F.R. § 230.158(b).  Here, Plaintiffs do not, and cannot, dispute that Midwest Operating purchased its 2006-5 certificates after more than 12 months of distribution reports for the 2006-5 certificates were made publicly available.[15]

---

[15]  The 13 monthly distribution reports that preceded Midwest Operating's purchase in October 2007 are publicly available at http://www.ctslink.com/FullDocument.do?Selector=Series Document%2CPERIODICRPT%2CMBS%2CTMHL%2C20065%2CTMHL_20065_ RMT%2CPDF.  *See also* Ex. B at S-28 (providing website address for distribution reports).

*Second*, Plaintiffs' assertion that the distribution reports do not contain "certain information filed on Form 10-K or Form 10-Q" (Ps' Br. at 42) ignores their own admission that "asset-backed securities are not required to file Form 10-Qs" (*id.*) and that "existing disclosure and reporting requirements, which are designed primarily for corporate issuers and their securities, do not elicit relevant information for most asset-backed securities transactions." *Asset-Backed Securities*, 70 Fed. Reg. 1506, 1508 (Jan. 7, 2005).  Thus, as the SEC has explained, "[i]n lieu of quarterly reports on Form 10-Q, ABS issuers today generally file . . . the distribution reports required to be prepared under the transaction agreements that detail the payments and performance of the financial assets in the asset pool and payments on the securities backed by that pool."  *Id.* at 1509.  The reports therefore contain the functional equivalent of the information that would be contained in a Form 10-Q.[16]

*Third*, Plaintiffs' attempt to invoke a legal presumption of reliance under the fraud-on-the-market theory in lieu of the statutory presumption of reliance under Section 11 ignores that there is no allegation of an efficient market for the certificates.  In the absence of an efficient market, the fraud-on-the-market presumption of reliance does not apply.  *See Joseph v. Wiles*,

---

[16]  Plaintiffs mistakenly rely on *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 641 (S.D. Tex. 2003) (Ps' Br. at 44).  In *Enron*, the court did not suggest, much less hold, that the information contained in a Form 10-Q is different from the type of information contained in a Form 10-K or an "earning statement."  To the contrary, SEC Rule 158 makes clear that the information contained in a Form 10-Q is "sufficient" for the "information required" in an "earning statement" under Section 11.  17 C.F.R. § 230.158(a)(1)(i).

Plaintiffs also mistakenly rely on cases in which the earning statement contained "the very misrepresentations at stake in the Section 11 claim."  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 293-94 (S.D.N.Y. 2003) (Ps' Br. at 45).  *See also In re Countrywide Fin. Corp. Sec. Litig.*, 2009 WL 7322254 (C.D. Cal. Dec. 9, 2009); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147 (S.D.N.Y. 2007), *vacated in part*, 574 F.3d 29 (2d Cir. 2009); *In re Enron Corp. Sec. Derivative & ERISA Litig.*, 529 F. Supp. 2d 644, 697 (S.D. Tex. 2006).  The alleged misrepresentations here concern the underwriting standards and appraisals used by the loan originators, not "errors in calculation" by the servicer.  Ps' Br. at 44.

223 F.3d 1155, 1164 n.2 (10th Cir. 2000).[17]  Plaintiffs' cases involving traditional corporate securities traded on "open and developed" markets thus have no application here.  *See, e.g.*, *WorldCom*, 219 F.R.D. at 295 (legal presumption of reliance under fraud-on-the-market theory applied because "there was an open and developed market in WorldCom securities").

In the absence of a presumption of reliance, Plaintiffs' claim relating to the 2006-5 certificates must be dismissed because the Amended Complaint is devoid of any allegation that Midwest Operating relied on the alleged misrepresentations in the 2006-5 Offering Documents.

## V.    PLAINTIFFS' FEDERAL SECURITIES CLAIMS ARE TIME-BARRED

### A.    Plaintiffs Concede That The Amended Complaint Does Not Plead Facts To Establish Their Compliance With The One-Year Statute Of Limitations

Plaintiffs do not dispute that the Amended Complaint fails to plead any facts showing their compliance with the one-year statute of limitations under Section 13.[18]  Instead, Plaintiffs ask this Court to disregard the absence of any factual allegations because "none of the authorities requiring plaintiffs to affirmatively plead compliance with the statute of limitations are binding on this court."  Ps' Br. at 48.  Plaintiffs are wrong.  The Tenth Circuit made clear *twenty years ago* that plaintiffs must affirmatively plead and prove facts showing their compliance:

---

[17]  Plaintiffs misleadingly suggest that *Joseph* questioned whether proof of reliance for Section 11 claims is ever required.  *See* Ps' Br. at 45-46.  *Joseph* addressed the distinct issue of standing under Section 11.  223 F.3d at 1158-61.  *Joseph* did not address, much less abrogate, the requirement that "[w]hen a section 11(a) plaintiff has acquired the securities more than twelve months after the effective date of the registration statement, and if the issuer has distributed an 'earnings statement' for that period, the plaintiff must prove reliance on the material misstatement or omission."  Thomas Lee Hazen, The Law of Securities Regulation § 7.3[4] (6th ed. 2009).  *See also APA Excelsior III  v. Premiere Techs.*, 476 F.3d 1261, 1271 (11th Cir. 2007).

[18]  While Plaintiffs conclusorily assert that "the §§ 11 and 12(a)(2) claims were brought within one year after discovery of the untrue statements and omissions in the Offering Documents, and within three years after the Certificates were sold to plaintiffs and the members of the Class" (Ps' Br. at 47), Plaintiffs identify no facts to support their mere assertion.

> To comply with Section 13, the plaintiff must plead and prove facts showing that his claim was timely with respect to both the one-year and three-year limitation periods. . . . Section 13 is substantive, rather than procedural; it establishes an essential ingredient to a private cause of action. Thus, an untimely complaint must be dismissed as a matter of law.

*Anixter*, 939 F.2d at 1434. Thus, courts in this Circuit "uniformly hold that a plaintiff must affirmatively plead compliance with Section 13 [15 U.S.C. § 77m] as it forms a substantive element of a Securities Act claim." *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1115 (N.D. Okla. 2003). *See also Ames v. Uranus Inc.*, 1993 WL 106896, at *4 (D. Kan. Mar. 17, 1993) (same); *Flinn v. Petro-Lewis Corp.*, 1985 WL 358, at *3 (D. Colo. Nov. 8, 1985) (same).

Because the Amended Complaint does not comply with the Tenth Circuit's longstanding requirement that plaintiffs plead facts showing their compliance with Section 13's one-year statute of limitations, Plaintiffs' Section 11 and 12(a)(2) claims must be dismissed. *See In re Infonet Servs. Corp. Sec. Litig*, 310 F. Supp. 2d 1106, 1115 (C.D. Cal. 2003) ("Plaintiffs have failed even to adequately plead that they have complied with the statute of limitations. . . . For that reason alone, Plaintiffs' claims under the Securities Act must be dismissed.").[19]

**B.    Plaintiffs' Claims Should Be Dismissed With Prejudice Because A Reasonable Investor Would Have Discovered The Facts Underlying Plaintiffs' Claims More Than One Year Prior To February 27, 2009**

Moreover, Plaintiffs' Section 11 and 12(a)(2) claims should be dismissed with prejudice because there were myriad allegations in the public record that would have caused a reasonable investor to discover the facts underlying Plaintiffs' claims more than one year prior to the filing

---

[19]   Plaintiffs ask for "leave to amend" to plead their discovery of alleged "errors in calculation" by the servicer for the 2006-5 certificates. Ps' Br. at 55 & n.29. The alleged misrepresentations here concern the underwriting standards and appraisals used by the loan originators, not "errors in calculation" by the servicer. Thus, Plaintiffs' alleged discovery of the "errors in calculation" by the servicer has no bearing on the statute of limitations for the claims relating to their 2006-5 certificates.

of this lawsuit on February 27, 2009. *See Caprin v. Simon Transp. Servs., Inc.*, 99 F. App'x 150, 157 (10th Cir. 2004) (affirming dismissal of Securities Act claims as time-barred).[20]

In an attempt to stave off dismissal with prejudice, Plaintiffs assert that "the Court should decline to take judicial notice of articles that are not referenced in the Complaint." Ps' Br. at 50. But, as this Court held after reviewing the Tenth Circuit's decision in *Sterlin*, "it is appropriate for the Court to consider, on a motion to dismiss, materials such as newspaper articles not referenced in a complaint." *Lane*, 649 F. Supp. 2d at 1301.[21] *See also In re Thornburg*, 2009 WL 5851089, at *2 (D.N.M. Dec. 21, 2009) ("That judicial notice may be taken during any stage of the judicial proceeding includes at the stage of a motion to dismiss.").

The reason Plaintiffs want the Court to ignore the public materials is that they make clear that the allegations upon which the original complaint was filed were well known over one year prior to its filing on February 28, 2009. The core allegation in the original complaint was that defendants "concealed the fact" that "the Certificates were not supported by high-quality prime loans, but instead were supported by risky, Alternative-A ('Alt-A') mortgage loans." (Dkt. 1,

---

[20] Plaintiffs fail to explain how *Merck & Co. v. Reynolds*, 130 S. Ct. 1784 (2010), which interpreted the fraud limitation provisions of 28 U.S.C. § 1658(b), has any impact here. As this Court explained in *Lane v. Page*, 649 F. Supp. 2d 1256, 1301 (D.N.M. 2009), "[i]n the Tenth Circuit, . . . 'the one-year statute of limitations period begins to run once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud.'" *Id.* at 1301 (quoting *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1201 (10th Cir. 1998)). The standard adopted by the Supreme Court in *Merck* is no higher. *Merck*, 130 S. Ct. at 1798 (limitations period begins to run when "a reasonably diligent plaintiff would have 'discovered the facts constituting the violation'") (quoting 28 U.S.C. § 1658(b)(1)). *See also Sewell v. D'Alessandro & Woodyard, Inc.*, 725 F. Supp. 2d 1344, 1346 (M.D. Fla. 2010) (finding that *Merck* had no impact on dismissal of non-fraud Securities Act claims).

[21] Neither *Mobley v. McCormick*, 40 F.3d 337 (10th Cir. 1994) nor *Miller* (Ps' Br. at 50) addressed the propriety of considering materials that may be judicially noticed on a motion to dismiss a securities claim. *Compare Lane*, 649 F. Supp. 2d at 1300 ("reviewing public materials from outside the complaint is appropriate in a rule 12(b)(6) motion based upon inquiry notice in securities litigation").

Ex. A, ¶¶ 8, 13).  This information was not concealed.  Indeed, Plaintiffs do not dispute that the

Offering Documents themselves disclosed that the 2006-3, 2006-5 and 2007-4 certificates were

supported by "Alt-A" loans, including "Alt-A" loans from Wells Fargo.[22]  The risks associated

with Alt-A loans had been well publicized since at least 2005.[23]

      Plaintiffs' only response is to disregard the disclosures in the Offering Documents that

"placed investors on notice" that the 2006-3, 2006-5, and 2007-4 certificates were supported by

"Alt-A" loans and to assert that "none of the articles are directly related to the Thornburg

Mortgage issuing trusts; rather, they related to the mortgage originators whose loans comprised

the [mortgage] pools."  Ps' Br. at 53-54.  Plaintiffs, however, ignore the standard in the Tenth

Circuit:  "[A] reasonable investor need only be on notice of the possibility of fraud, not on notice

of the precise contours of the fraudulent scheme for the statute of limitations to start running. . . .

[W]e agree with the district court that sufficient facts to support the claims now before us could

have been uncovered shortly before the April 2 press release; as a result, we conclude the district

court correctly dismissed the Securities Act claims as untimely."  *Caprin*, 99 F. App'x at 157.[24]

---

[22]  *See* Ds' Opening Br. at 9 (Dkt. 126) and *compare In re Thornburg Mortg., Inc. Sec. Litig.*, 683 F. Supp. 2d 1236, 1258-59 (D.N.M. 2010), *with* 2006-3 Pro Supp. at S-98 to S-99 (Ex. A); 2006-5 Pro Supp. at S-24, S-33, S-37 to S-40 (Ex. B); 2007-4 Pro Supp. at S-38 to S-39 (Ex. C).

[23]  J. Shenn, *'Prime,' 'Subprime,' 'Nonprime' – Does it Matter?*, AM. BANKER, Oct. 21, 2005 (Ex. U) (noting that Alt-A loans "ignore traditional standards for documentation").

[24]  Plaintiffs do not dispute that, in the summer of 2007, the press raised significant questions about Thornburg MBS and noted that "the value of Thornburg's highly-rated mortgage securities used as collateral for its loans has fallen significantly."  D. Landis, *Thornburg: Another Subprime Victim?*, KIPLINGER.COM, Aug. 15, 2007 (Ex. BB).  *See also* F. Norris, *With Markets Moving Wildly, Insight Suffers*, N.Y. TIMES, Aug. 17, 2007 (Ex. AA) (reporting on Thornburg's recent credit crunch and that questions have been raised "about the value of mortgage securities and the credibility of the ratings that enabled the securities to be sold").

Moreover, Plaintiffs cannot have it both ways.  On the one hand, Plaintiffs contend that they need not "point to specific loans within each trust to plead a material misstatement or omission under § 11" and that generalized allegations regarding Thornburg's underwriting practices are sufficient to state a claim.  Ps' Br. at 9.  On the other hand, Plaintiffs maintain that the myriad public information on Thornburg's underwriting practices was insufficient to put them on notice of their claims because it was not "directly related to the Thornburg Mortgage issuing trusts."  *Id.* at 53.  If Plaintiffs' generalized allegations regarding Thornburg's underwriting practices are a sufficient basis to assert viable claims, then the public information on Thornburg's underwriting practices that was available in 2006 and 2007 was equally sufficient to put Plaintiffs on notice of their claims well over a year before the original complaint was filed on February 28, 2009.  Accordingly, Plaintiffs' claims should be dismissed with prejudice.  *See Caprin*, 99 F. App'x at 156 (dismissing Securities Act claims because "much of the information submitted by the Caprins as the factual basis underlying their accounting fraud claims is based on public information" available more than one year prior to filing of lawsuit).

C.   **Plaintiffs' Claims Relating To The 2006-3 And 2006-5 Offerings Also Should Be Dismissed With Prejudice Because *American Pipe* Tolling Does Not Apply To The One-Year Statute Of Limitations For Those Claims**

Plaintiffs do not dispute that, absent tolling, their claims relating to the 2006-3 and 2006-5 offerings are barred by the one-year statute of limitations.  Indeed, Plaintiffs concede that (i) the original named plaintiff, Genesee County, had no standing to assert claims relating to the

2006-3 or 2006-5 offerings because it did not purchase any 2006-3 or 2006-5 certificates;[25] (ii) no investor that actually purchased 2006-3 or 2006-5 certificates was named as a plaintiff until December 10, 2010; and (iii) the original complaint itself confirms that a reasonable investor would have discovered the facts underlying Plaintiffs' claims relating to the 2006-3 or 2006-5 offerings no later than February 2008.  *See* Ps' Br. at 56-60.

*American Pipe* tolling does not salvage Plaintiffs' claims.  In *American Pipe*, the limitations period was deemed tolled where the original named plaintiff had been "found to be representative of [the] class."  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554-56 (1974).  The Supreme Court specifically noted that its holding was not addressed to the situation where, as here, there was a "lack of standing of the representative."  *Id*. at 553.  "Standing is a threshold constitutional requirement that . . . can not be dispensed with by styling the complaint as a class action."  *Lehman MBS*, 684 F. Supp. 2d at 490.  Thus, as courts in MBS cases repeatedly have held prior to determinations on class certification, "*American Pipe* and the cases interpreting it support the declination to extend tolling to claims over which the original named Plaintiffs asserted no facts supporting standing."  *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 2010 WL 4117477, at *6 (N.D. Cal. Oct. 19, 2010).[26]  *See also WaMu MBS*,

---

[25]  "Every court to address the issue in a MBS class action has concluded that a plaintiff lacks standing under both Article III of the U.S. Constitution and under Sections 11 and 12(a)(2) of the 1933 Act to represent the interests of investors in MBS offerings in which the plaintiffs did not themselves buy."  *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010).

[26]  The relation back doctrine likewise has no application where, as here, a party seeks to relate back to a filing by a plaintiff that never had standing to assert the claims at issue.  *See Wells Fargo*, 2010 WL 4117477, at *7 (rejecting application of relation back doctrine because the original plaintiffs did not have standing to assert the claims at issue); *N.J. Carpenters v. DLJ*, 2010 U.S. Dist. LEXIS 136142, at *8-9 (S.D.N.Y. Dec. 15, 2010) (same).

748 F. Supp. 2d at 1259 (same); *Countrywide MBS*, 722 F. Supp. 2d at 1166-67 (same); *DLJ*, 2010 U.S. Dist. LEXIS 136142, at *6-7 (same).

The tolling rule in *American Pipe* has no application here because, unlike the original plaintiff in *American Pipe* who was "found to be representative of the class," the original plaintiff here never alleged purchases of, and therefore lacked standing to assert claims relating to, the 2006-3 and 2006-5 certificates. Because *American Pipe* tolling does not apply, Plaintiffs' claims relating to the 2006-3 and 2006-5 offerings should be dismissed with prejudice.

>    **D.     Plaintiffs' Claims Relating To The 2006-3 And 2006-5**
>    **Offerings Also Should Be Dismissed With Prejudice**
>    **Because They Are Barred by The Three-Year Statute Of Repose**

Plaintiffs do not dispute that, absent tolling, their claims relating to the 2006-3 and 2006-5 certificates are barred by the three-year statute of repose. The Tenth Circuit has explained that "no concept of equitable tolling can have validity beyond the three-year period of repose because Congress did not allow for breaching the Chinese Wall it intentionally created." *Anixter,* 939 F.2d at 1435. In *Joseph*, the Tenth Circuit applied *American Pipe* tolling to the statute of repose on the ground that *American Pipe* tolling is "legal rather than equitable in nature." 223 F.3d at 1166-67. However, two years later in *Young v. U.S.*, 535 U.S. 43 (2002), the Supreme Court cited *American Pipe* tolling as an example of equitable, rather than legal, tolling. *Id.* at 49. In the wake of *Young*, courts have held that "*American Pipe* tolling does not apply to the '33 Act statute of repose" because "a federal statute of repose is not subject to equitable tolling." *Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, __ F. Supp. 2d __, 2011 WL 907121, at *4-5 (S.D.N.Y. Mar. 16, 2011). *See also In re Lehman Bros. Sec. & ERISA Litig.*, 2011 WL 1453790, at *3 (S.D.N.Y. Apr. 13, 2011) (*American Pipe* tolling does not apply to three-year statute of

repose because "the Supreme Court . . . ha[s] cited *American Pipe* as an example of equitable tolling").[27]

Because *American Pipe* tolling does not apply to the three-year statute of repose, Plaintiffs' claims relating to the 2006-3 and 2006-5 offerings should be dismissed with prejudice.

## VI.   PLAINTIFFS FAIL TO STATE A CONTROL PERSON CLAIM

Plaintiffs do not dispute that, in the absence of a primary violation of Section 11 or 12(a)(2) by the Depositor Defendants, Plaintiffs' Section 15 claim against RBS and the Individual Defendants for control person liability must be dismissed.  *See Thornburg*, 683 F. Supp. 2d at 1251.  Plaintiffs' Section 15 claim also must be dismissed because the Amended Complaint fails to plead sufficient facts establishing "control" by RBS or the Individual Defendants over the Depositor Defendants.  *See Maher*, 144 F.3d at 1306.

### A.   RBS

Plaintiffs flatly mischaracterize the decision in *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 2010 WL 4903619 (S.D.N.Y. Dec. 1, 2010) ("*Merrill Lynch II*").  In *Merrill Lynch II*, the court did *not* hold that the plaintiffs had adequately pled a Section 15 claim against the "underwriter bank" affiliate of the depositor defendant, as Plaintiffs represent in their alterations to the language of the decision.  *See* Ps' Br. at 63.  Instead, the court held that a Section 15 claim had been stated against the parent company of the depositor defendant, but *reiterated* that it had previously dismissed *with prejudice* the Section 15 claim against the underwriter bank affiliates of the depositor defendant.  2010 WL 4903619, at *4 n.8.  Here, RBS

---

[27]  Likewise, "as a number of courts have stated, the Rule 15(c) relation back doctrine does not apply to statutes of repose." *Lehman*, 2011 WL 1453790, at *4 (collecting cases).  *See also Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir. 2002) (rejecting application of relation back doctrine to statute of repose).

is alleged to be the underwriter bank "affiliate" of GCA.  (¶ 22).  As the court in the *Merrill Lynch* cases explained in dismissing the Section 15 claim against the underwriter bank affiliates of the depositor *with prejudice*, "allegations of a corporate affiliation between defendants are insufficient to indicate control by one over another."  *Merrill Lynch I*, 714 F. Supp. 2d at 485.

Plaintiffs' Section 15 claim against RBS should likewise be dismissed.  Plaintiffs' allegation that GCA's revenue from the 2006-3 offering "inured" to the benefit of RBS (Ps' Br. at 63), does not come close to establishing RBS's "control" over GCA.  *See Maher*, 144 F.3d at 1306 ("Fraser's ownership interest" is "insufficient to establish Fraser's control").  That RBS "participated [as an underwriter] in Depositor Defendant GCA's issuance of the Certificates, including prominently featuring [its name] on the front page of the Prospectus and Prospectus Supplement for Series 2006-3" (Ps' Br. at 63) adds nothing, as confirmed by Plaintiff's own case.  *See J.P. Morgan*, 2011 WL 1201520, at *14 (Ps' Br. at 62) ("Nor is the fact that the J.P. Morgan name appeared prominently on the Prospectus Supplement, lending the investment the imprimatur of the larger corporation, enough to establish control person liability.").

"Control" for purposes of Section 15 liability "means the practical ability to *direct* the actions" of the alleged primary violator.  *RALI MBS*, 2010 WL 127528, at *7.  In *Lane*, this Court found that an entity's alleged "contractual power to control or veto" the decisions of an alleged primary violator were sufficient to state a control person claim.  649 F. Supp. 2d at 1309. Here, Plaintiffs do not allege anything akin to "contractual power to control or veto."  Instead, Plaintiffs allege that RBS had "involvement with the Depositor Defendant GCA's operations" because three RBS employees served as GCA directors or officers.  Ps' Br. at 63.  That is insufficient.  *See Sloane Overseas v. Sapiens Int'l Corp.*, 941 F. Supp. 1369, 1379 (S.D.N.Y.

1996) (dismissing Section 15 claim based on allegations that underwriter bank was a founder, creditor, and shareholder of issuer and had its Vice President on issuer's board of directors).

**B.**     **Individual Defendants**

Plaintiffs concede that the Amended Complaint alleges only that "each of the Individual Defendants signed the relevant Registration Statements and was a high-level executive and/or director of the Depositor Defendants." Ps' Br. at 61. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003) ("The assertion that a person was a member of a corporation's board of directors . . . does not suffice to support an allegation that the person is a control person . . . ."); *Thornburg*, 683 F. Supp. 2d at 1251 ("A high-ranking position within the corporation . . . is unlikely to satisfy the 'control' element of a control-person claim . . . .").

This same type of blanket allegation has been flatly rejected: "Plaintiffs simply allege that the Individual Defendants were either officers or directors of [the depositor defendant] and that they signed the Registration Statements. . . . This offers no factual content that would establish a plausible claim." *WaMu MBS*, 748 F. Supp. 2d at 1257. "Plaintiffs should have substantiated their allegations about the Individual Defendants with individualized facts," but have not done so. *Id.* (dismissing Section 15 claim).[28]

---

[28] By contrast, in *Lane*, where the proxy statement allegedly failed to disclose D.E. Shaw's involvement in a merger, plaintiffs alleged that there was correspondence with the individual defendants showing that they were aware of an agreement not to disclose D.E. Shaw's involvement and were the "architects of D.E. Shaw's role being kept secret." 649 F. Supp. 2d at 1268, 1309.

## VII.   PLAINTIFFS' CLAIM UNDER THE NEW MEXICO SECURITIES ACT SHOULD BE DISMISSED

Plaintiffs do not dispute that if the Amended Complaint fails to state a federal securities claim, it also fails to state a claim under the N.M. Securities Act.  *See Freedman v. Value Health, Inc.*, 2000 WL 630916, at *7 (D. Conn. Mar. 24, 2000).[29]

Plaintiffs' N.M. Securities Act claims also must be dismissed because Plaintiffs scrupulously avoid any allegation that they purchased, or were offered, certificates in New Mexico.  Instead, Plaintiffs contend that it is sufficient that certain of the mortgage loans in the pools underlying the certificates were originated or acquired by Thornburg in New Mexico.  *See* Ps' Br. at 64.  Not so.  Section 58-13B-30(B) of the N.M. Securities Act applies only if an "offer to sell" or "an offer to purchase" a *security* is made in New Mexico.  Thornburg did neither. Instead, it sold loans to the Depositor Defendants, which pooled the loans and transferred the mortgage pools to the trusts.  The trusts issued the certificates, the offerings of which were underwritten by the Underwriter Defendants.  Neither the Depositor Defendants, the trusts, nor the Underwriter Defendants are New Mexico entities.[30]

---

[29]  Nor do Plaintiffs dispute that their N.M. Securities Act claims relating to the 2006-3 and 2006-5 offerings are time-barred if, as explained in Section V above, *American Pipe* tolling does not apply to the statutes of limitation for their claims.  *See* Ds' Opening Br. at 54-55 (Dkt. 126).

[30]  There are similarly no allegations of any New Mexico contacts by the Individual Defendants. Thus, if the Court dismisses the federal Securities Act claims, it should decline to exercise jurisdiction over Plaintiffs' N.M. Securities Act claims.  *See U.S. v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002) (reversing district court's exercise of personal jurisdiction over pendent claim following dismissal of anchor claim upon which federal court jurisdiction was based); *Malone v. Clark Nuber, P.S.*, 2008 WL 4279502, at *2 (W.D. Wash. Sept. 12, 2008) ("[N]ow that the federal [securities] claims have been dismissed, they no longer provide a basis for asserting pendent personal jurisdiction over Enterprise for the state law claims.").

Judge Parker's decision in *Greene v. Horizon/CMS Healthcare Corp.,* 1998 WL 2030956 (D.N.M. July 13, 1998) (Ps' Br. at 64-65) underscores the inadequacy of Plaintiffs' pleading.  In *Greene*, the court found the plaintiffs' allegations sufficient at the pleading stage because (i) the issuer of the security was Horizon; and (ii) "Horizon's principal place of business is in New Mexico."  *Id.* at *1, 8.  Unlike Horizon, Thornburg is *not* the issuer of the security.  Rather, the issuers here are the trusts, which are all Delaware entities.  (¶ 21).  Plaintiffs thus simply cannot allege what the plaintiffs in *Greene* alleged.

Accordingly, the N.M. Securities Act claims should be dismissed because Plaintiffs do not, and cannot, allege that they purchased, or were offered, certificates in New Mexico.

## CONCLUSION

For all these reasons, the moving defendants herein respectfully request that the Court dismiss Plaintiffs' claims against them with prejudice.

Respectfully submitted,

MONTGOMERY & ANDREWS, PA

By:___/s/ Victor R. Ortega_____
    Victor R. Ortega
    325 Paseo de Peralta
    Santa Fe, NM 87501
    (505) 982-3873

*Attorneys for Defendants Greenwich Capital Acceptance, Inc. (n/k/a RBS Acceptance Inc.), Structured Asset Mortgage Investments II, Inc., Credit Suisse Securities (USA) LLC, RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.), Robert J. McGinnis, Carol P. Mathis, Joseph N. Walsh III, John C. Anderson, James M. Esposito, Michael B. Nierenberg, and Thomas F. Marano*

Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By:___/s/ Eric R. Burris_____
    Eric R. Burris
    201 Third NW, Suite 1700
    Albuquerque, NM 87102
    (505) 244-0770

*Attorneys for Defendants Jeffrey Mayer and Jeffrey L. Verschleiser*

GIBSON DUNN & CRUTCHER LLP
Robert F. Serio
Aric H. Wu
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000

*Attorneys for Defendants Greenwich Capital
Acceptance, Inc. (n/k/a RBS Acceptance
Inc.), Structured Asset Mortgage Investments
II, Inc., Credit Suisse Securities (USA) LLC,
RBS Securities Inc., Robert J. McGinnis,
Carol P. Mathis, Joseph N. Walsh III, John C.
Anderson and James M. Esposito*

MORRISON & FOERSTER LLP
Joel C. Haims
Ruti Smithline
1290 Avenue of the Americas
New York, NY 10104-0050
212-468-8000

*Attorneys for Defendants
Michael B. Nierenberg and Thomas F. Marano*

GREENBERG TRAURIG LLP
Richard A. Edlin
Ronald D. Lefton
Candace Camarata
200 Park Avenue
New York, NY 10166
(212) 801-9200

*Attorneys for Defendant Jeffrey Mayer*

KRAMER LEVIN NAFTALIS
& FRANKEL LLP
Dani R. James
Jade A. Burns
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

*Attorneys for Defendant
Jeffrey L. Verschleiser*

31

## CERTIFICATE OF SERVICE

I hereby certify that, on May 12, 2011, a true and correct copy of the foregoing pleading was filed electronically pursuant to CM/ECF procedures for the District of New Mexico, which caused counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.


<u>      /s/ Victor R. Ortega          </u>
Victor R. Ortega