UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| GENESEE COUNTY EMPLOYEES'<br>RETIREMENT SYSTEM, et al., On Behalf of<br>Themselves and All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>THORNBURG MORTGAGE, INC., et al.,<br><br>                              Defendants. | No. 1:09-cv-00300-JB-KBM<br><br>CLASS ACTION<br><br>STIPULATION OF SETTLEMENT |

759724_4

This Stipulation of Settlement, dated as of December 3, 2012 (the "Stipulation"), is made and entered into by and among the following Settling Parties to the above-captioned Litigation: (i) the Lead Plaintiffs (on behalf of themselves and each of the Settlement Class Members), by and through their counsel of record in the Litigation; and (ii) the Defendants, by and through their counsel of record in the Litigation.[1]   The Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims and result in the complete dismissal of this Litigation with prejudice, upon and subject to the terms and conditions herein.

## I.    THE LITIGATION

The initial complaint was filed on February 27, 2009 in the First Judicial District Court in the County of Santa Fe, New Mexico asserting claims for violations of the Securities Act of 1933 (the "Securities Act") on behalf of all purchasers of Mortgage Loan Pass-Through Certificates sponsored by Thornburg Mortgage Home Loans, Inc.  On March 27, 2009, the initial complaint was removed to the United States District Court for the District of New Mexico (the "Litigation").  On February 26, 2010, the motion for appointment as lead plaintiff and approval of lead plaintiff's selection of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") filed by Maryland-National Capital Park & Planning Commission Employees' Retirement System and Midwest Operating Engineers Pension Trust Fund (collectively, the "Lead Plaintiffs") was granted.

On December 10, 2010, Lead Plaintiffs filed their Amended Complaint for Violations of §11, §12(a)(2) and §15 of the Securities Act of 1933 and §58-13B of the New Mexico Securities Act of 1986.  The Amended Complaint asserted claims on behalf of purchasers of the Series 2006-3, 2006-5 and 2007-4 mortgage loan pass-through certificates sponsored by Thornburg Mortgage Home Loans,

---

[1]      Capitalized terms used herein are defined in §III.

759724_4

Inc. and issued by Thornburg Mortgage Securities Trust 2006-3, Thornburg Mortgage Securities Trust 2006-5, and Thornburg Mortgage Securities Trust 2007-4 (the "Certificates") pursuant to shelf registration statements, prospectuses, and prospectus supplements filed with the United States Securities and Exchange Commission ("SEC"). Defendants filed motions to dismiss the Amended Complaint, which the Court granted in part and denied in part in an Order dated September 30, 2011, as subsequently explained in a Memorandum Opinion and Order dated November 12, 2011 (the "Memorandum Opinion"). The Court also granted Lead Plaintiffs leave to file a Second Amended Complaint, which was filed on December 19, 2011.

On November 30, 2011, Lead Plaintiffs and Defendants participated in a mediation session facilitated by Hon. Edward A. Infante (Ret.). In connection with the mediation process, Lead Plaintiffs conducted arm's-length negotiations with respect to a potential compromise and settlement of the Litigation with a view to achieving the best relief possible consistent with the interests of the Settlement Class. Lead Plaintiffs and Defendants were unable to reach agreement as to a settlement at the conclusion of the mediation.

On December 2, 2011, Defendants filed an opposed motion for partial reconsideration of the Memorandum Opinion, which was heard on July 19, 2012. On January 6, 2012, Lead Plaintiffs filed an opposed motion for leave to file a Third Amended Complaint, which was heard on July 19, 2012. On February 2, 2012, Defendants filed an opposed motion to dismiss the Second Amended Complaint, which was heard on July 19, 2012.

Discovery commenced in January 2012, including: (i) party and non-party production of documents; and (ii) depositions of the Lead Plaintiffs' investment managers and class certification expert. On April 30, 2012, Lead Plaintiffs filed an opposed motion to certify a class of all persons or

entities who purchased or otherwise acquired a beneficial interest in the Certificates and who were damaged thereby.[2]

The Settling Parties participated in a second mediation facilitated by Judge Infante on June 6, 2012. In connection with the mediation process, Lead Plaintiffs again conducted arm's-length negotiations with respect to a potential compromise and settlement of the Litigation with a view to achieving the best relief possible consistent with the interests of the Settlement Class. Lead Plaintiffs and Defendants were again unable to reach agreement as to a settlement at the conclusion of the mediation.

Following the second mediation session and after the July 19th hearing, the Settling Parties continued their settlement discussions, ultimately reaching an agreement to settle the Litigation for $11.25 million in cash. On September 11, 2012, the Settling Parties advised the Court that a tentative settlement had been reached subject to formal approval of the parties and the Court.

## II. ASSERTIONS AND DENIALS OF THE SETTLING PARTIES AND THE BENEFITS OF THE SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, Lead Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and likely appeals. Lead Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiffs are also mindful of

---

[2]     Excluded from the proposed class definition were Defendants and any originator of mortgage loans for the Certificates, as well as their respective officers, affiliates, and directors at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns and any entity in which such persons have or had a controlling interest.

- 3 -

the problems of proof, and possible defenses to the securities law violations asserted in the Litigation. Lead Plaintiffs believe that the Settlement set forth in the Stipulation confers substantial immediate benefits upon the Settlement Class Members, is in the best interests of the Lead Plaintiffs and the Settlement Class Members, and is fair, reasonable, and adequate.

Defendants, individually and collectively, have denied and continue to deny each and all of the claims and contentions alleged by Lead Plaintiffs in the Litigation. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendants further deny that the Lead Plaintiffs or the Settlement Class have suffered damages, that the price of the Certificates were artificially inflated at any time as the result of any alleged misrepresentations, omissions, non-disclosures or otherwise by Defendants, and that the Lead Plaintiffs or the Settlement Class were harmed by the conduct alleged in the Complaint.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also considered the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. Defendants have, therefore, determined that it is desirable and beneficial to them to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## III.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Lead Plaintiffs, acting on behalf of themselves and all Settlement Class Members, and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation, the Released Claims, and all matters encompassed within the scope of the

- 4 -

releases set forth or referenced in this Stipulation shall be finally, fully and forever compromised, settled, released, and discharged and the Litigation shall be completely dismissed with prejudice as to Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and all Released Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

**1.     Definitions**

As used in this Stipulation, the following terms have the meanings specified below:

1.1     "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2     "Certificates" means the Series 2006-3, 2006-5 and 2007-4 mortgage loan pass-through certificates sponsored by Thornburg Mortgage Home Loans, Inc., issued by Thornburg Mortgage Securities Trust 2006-3, Thornburg Mortgage Securities Trust 2006-5, and Thornburg Mortgage Securities Trust 2007-4, and registered and offered pursuant to shelf registration statements, prospectuses, and prospectus supplements filed with the SEC.

1.3     "Claimant" means any Settlement Class Member who files a Proof of Claim and Release in such form and manner, and within such time, as the Court shall prescribe.

1.4     "Claims Administrator" means Gilardi & Co. LLC.

1.5     "Complaint" means the Second Amended Complaint for Violations of §11, §12(a)(2) and §15 of the Securities Act of 1933 and §58-13B-30.B and §58-13B-40.A of the New Mexico Securities Act of 1986, filed on December 19, 2011.

1.6     "Court" means the United States District Court for the District of New Mexico.

1.7     "Covered Trusts" means the Thornburg Mortgage Securities Trust 2006-3, Thornburg Mortgage Securities Trust 2006-5, and Thornburg Mortgage Securities Trust 2007-4.

- 5 -

1.8     "Defendants" means the Depositor Defendants, Underwriter Defendants, and Individual Defendants.

1.9     "Depositor Defendants" means Greenwich Capital Acceptance, Inc. (n/k/a RBS Acceptance Inc.) and Structured Asset Mortgage Investments II, Inc.

1.10    "Effective Date" means the first date by which all of the events and conditions specified in ¶8.1 of the Stipulation have been met and have occurred.

1.11    "Escrow Account" means the interest-bearing account established and controlled by the Escrow Agent into which Defendants shall deposit or cause to be deposited the sum of $11,250,000.

1.12    "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successor(s).

1.13    "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the thirtieth (30th) day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such thirtieth (30th) day; and (iii) if a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last

- 6 -

resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and reimbursement of costs or the Plan of Allocation of the Net Settlement Fund.

1.14 "Final Approval Hearing" means the hearing to determine whether the proposed Settlement embodied by this Stipulation is fair, reasonable and adequate to the Settlement Class, and whether the Court should enter a Judgment approving the proposed Settlement.

1.15 "Individual Defendants" means Robert J. McGinnis, Carol P. Mathis, Joseph N. Walsh III, John C. Anderson, James M. Esposito, Jeffrey L. Verschleiser, Michael B. Nierenberg, Jeffrey Mayer and Thomas F. Marano.

1.16 "Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B, or such other substantially similar form agreed to by the Settling Parties.

1.17 "Lead Counsel" means Robbins Geller Rudman & Dowd LLP.

1.18 "Lead Plaintiffs" means Maryland-National Capital Park & Planning Commission Employees' Retirement System and Midwest Operating Engineers Pension Trust Fund.

1.19 "Person" means a natural person, individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

- 7 -

759724_4

1.20    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses and interest as may be awarded by the Court.

1.21    "Preliminary Approval Order" means the preliminary approval order (substantially in the form attached hereto as Exhibit A) as entered by the Court for mailing and publication of notice.

1.22    "Rating Agency Defendants" means The McGraw-Hill Companies, Inc. (through its Standard & Poor's Ratings Services division), Moody's Corporation, Moody's Investors Service, Inc., Fitch Inc., and Fitch Ratings, Ltd.

1.23    "Related Parties" means each of a Defendant's, Rating Agency Defendant's, or Covered Trust's past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, attorneys, accountants, auditors, underwriters, investment advisors, agents, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, affiliates, joint ventures, assigns, spouses, heirs, estates, related or affiliated entities, any entity in which a Defendant has a controlling interest, any member of an Individual Defendant's immediate family, any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant and/or any member of an Individual Defendant's immediate family, and any entity in which a Defendant and/or any member of an Individual Defendant's immediate family has or have a controlling interest (directly or indirectly). "Related Parties" specifically includes, but is not limited to, J.P. Morgan Securities LLC and Bear, Stearns & Co. Inc. and their past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, principals, controlling shareholders, attorneys, accountants, auditors, underwriters,

759724_4

investment advisors, agents, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, affiliates, joint ventures, assigns, or estates.

      1.24    "Released Claims" shall collectively mean any and all claims (including "Unknown Claims" as defined in ¶1.37 herein), demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, contingent or absolute, mature or immature, discoverable or undiscoverable, whether concealed or hidden, suspected or unsuspected, which now exist, or heretofore have existed, asserted or that could have been asserted by the Lead Plaintiffs or any Settlement Class Member against the Released Parties based upon or arising out of (a) the allegations, facts, transactions, events, occurrences, disclosures, statements, acts, representations, omissions or failures to act which were or could have been alleged in the Litigation, and (b) the purchase, acquisition, or disposition of the Certificates or any interest therein by the Lead Plaintiffs or any Settlement Class Member during the Relevant Time Period.  Released Claims do not include: (i) claims to enforce the Settlement; (ii) contractual representations and warranty claims belonging to the Thornburg Mortgage Securities Trust 2006-3, Thornburg Mortgage Securities Trust 2006-5, or Thornburg Mortgage Securities Trust 2007-4; (iii) claims pending in *In re TMST, Inc. f/k/a Thornburg Mortgage, Inc.*, No. 09-17787 (Bankr. D. Md.); (iv) claims pending in *In re Thornburg Mortgage, Inc. Sec. Litig.*, No. 07-815 (D.N.M.); (v) claims arising out of the purchase of securities other than the Certificates; and/or (vi) any governmental or regulatory agency's claims asserted against any of the Defendants in any criminal action or civil action other than this Litigation.

      1.25    "Released Parties" means each and all of the Defendants, the Rating Agency Defendants, the Covered Trusts and each and all of their Related Parties.

      1.26    "Relevant Time Period" means (i) the period June 1, 2006 through June 30, 2009, inclusive, for the Certificates issued by Thornburg Mortgage Securities Trust 2006-3; and (ii) the

759724_4

period June 1, 2006 through December 10, 2010, inclusive, for the Certificates issued by Thornburg Mortgage Securities Trust 2006-5 and Thornburg Mortgage Securities Trust 2007-4.

1.27    "Settlement" means the settlement contemplated by this Stipulation.

1.28    "Settlement Class," "Settlement Class Members," or "Members of the Settlement Class" mean all purchasers or acquirers of the Certificates during the Relevant Time Period. Excluded from the Settlement Class are: Defendants, the Covered Trusts, Thornburg, and any originator of mortgage loans underlying the Certificates, as well as each and all of the foregoing person's respective officers, affiliates, and directors at all relevant times, members of their immediate families, and their legal representatives, heirs, successors, or assigns and any entity in which such persons have or had a controlling interest, and any Person who timely and validly seeks exclusion from the Settlement Class.

1.29    "Settlement Fund" means the principal amount of Eleven Million Two Hundred Fifty Thousand Dollars ($11,250,000), plus any accrued interest earned thereon.

1.30    "Settling Parties" means, collectively, the Defendants and the Lead Plaintiffs, on behalf of themselves and the Settlement Class Members.

1.31    "Stipulation" means this Stipulation of Settlement, including the recitals and exhibits hereto.

1.32    "Supplemental Agreement" means the agreement described in ¶8.3.

1.33    "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Amount (described in ¶2.7 below).

1.34    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents including, without

759724_4

limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in ¶2.7.

1.35   "Thornburg" means TMST, formerly known as Thornburg Mortgage, Inc. and Thornburg Mortgage Home Loans, Inc.

1.36   "Underwriter Defendants" means Credit Suisse Securities (USA) LLC, RBS Securities Inc. (f/k/a Greenwich Capital Markets, Inc.), and Banc of America Securities LLC.

1.37   "Unknown Claims" means collectively any Released Claims that the Lead Plaintiffs or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision not to object to or opt out of this Settlement. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs shall expressly waive, and each of the Settlement Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiffs shall expressly waive and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. Lead Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the

- 11 -

Released Claims, but Lead Plaintiffs shall expressly fully, finally and forever settle and release, and

each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation

of the Judgment shall have, fully, finally, and forever settled and released, any and all Released

Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not

concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity

now existing or coming into existence in the future, including, but not limited to, conduct which is

negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to

the subsequent discovery or existence of such different or additional facts.   Lead Plaintiffs

acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to

have acknowledged, that the foregoing waiver was separately bargained for and a key element of the

Settlement of which this release is a part.

## 2. The Settlement

### a. The Settlement Fund

2.1   In consideration of the terms of this Stipulation, including the release of the

Individual Defendants, the non-Individual Defendants shall pay or cause to be paid the sum of

$11,250,000 (the "Settlement Amount") into the Escrow Account no later than fifteen (15) calendar

days after entry of the Court's Preliminary Approval Order and the provision of wiring instructions

and the payee's Form W-9.   If the Settlement Amount is not timely transferred to the Escrow

Account as provided in this paragraph, the Settlement may be voided at the option of Lead Plaintiffs.

### b. The Escrow Agent

2.2   The Escrow Agent shall invest funds in the Escrow Account in instruments backed by

the full faith and credit of the United States Government or an agency thereof (or a mutual fund

invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing

759724_4

transaction accounts up to the limit of Federal Deposit Insurance Corporation insurance. The Defendants and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. The Settlement Fund shall bear all risks related to the investments of the Settlement Amount in accordance with the guidelines set forth in this paragraph.

2.3     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of Lead Counsel and Defendants' Counsel.

2.4     Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.

2.5     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.6     The Escrow Agent shall establish a "Notice and Administration Fund," and may deposit up to $500,000 from the Settlement Fund into it. The Notice and Administration Fund shall be used by Lead Counsel to pay the costs and expenses reasonably and actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the net Settlement Fund to Authorized Claimants, and processing Proof of Claim and Release forms. The Notice and Administration Fund may also be invested and earn interest as provided in ¶2.2 above. If the costs of notice and administration do not exceed $500,000, the balance with any interest earned shall be refunded to the Settlement Fund by the Escrow Agent. If the reasonable costs of notice and administration exceed $500,000, then, after the occurrence of the Effective Date, Lead Counsel may

- 13 -

authorize payment of such amounts from the Settlement Fund. Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to ¶2.7, ¶2.8, ¶6.2 and ¶8, Defendants are not responsible for, and shall not be liable for, any costs incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Settlement Fund, or processing Proof of Claim and Release forms.

    **c.**  **Taxes**

  2.7  (i)  The Settling Parties and the Escrow Agent agree to treat the Settlement Fund and Notice and Administration Fund at all times as a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.7(i), including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

    (ii)  For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.7 hereof) shall be consistent with this ¶2.7(ii) and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.7 herein.

- 14 -

(iii)       All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Defendants or their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) Tax Expenses shall be paid out of the Settlement Fund; in no event shall Defendants, their Related Parties, or their counsel have any responsibility for, or liability whatsoever with respect to, the Taxes or the Tax Expenses.  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Defendants, their Related Parties, nor their counsel are responsible therefore nor shall they have any liability with respect thereto. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(iv)       Except as required by ¶2.1 concerning payment of the Settlement Amount and subject to ¶2.8, ¶6.2 and ¶8 below, neither Defendants nor their Related Parties are responsible for Taxes or Tax Expenses, nor shall they be liable for any claims with respect thereto.

### d.    Termination of the Settlement

2.8     In the event that the Settlement is not approved, or is terminated, canceled, or fails to become effective for any reason, the provisions of ¶8.4 herein shall be followed.

759724_4

### 3.    Certification of the Settlement Class

3.1    Solely for purposes of this Settlement, and subject to approval by the Court, the Settling Parties agree that the Settlement Class shall be certified and Lead Plaintiffs and Lead Counsel shall be appointed as representatives of the Settlement Class pursuant to Federal Rule of Civil Procedure 23, as set forth in the Preliminary Approval Order. Should the Settlement Class not be certified, or should any court materially amend the scope of the Settlement Class, each of the Settling Parties reserve the right to void this Stipulation in accordance with ¶8 herein. If the Settlement is not approved or is terminated for any reason, Defendants may oppose any motion for class certification that Lead Plaintiffs may file, and neither Lead Plaintiffs nor Defendants shall suggest in their submissions in support of or in opposition to class certification that any inference of any kind should be drawn from the Settlement Class proposed in this Stipulation.

### 4.    Preliminary Approval Order and Final Approval Hearing

4.1    Promptly after execution of the Stipulation, Lead Counsel shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, requesting, inter alia, the preliminary approval of the Settlement set forth in the Stipulation, and approval for mailing a settlement notice ("Notice"), substantially in the form of Exhibit A-1 attached hereto, and publication of a summary notice ("Summary Notice"), substantially in the form of Exhibit A-2 attached hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶7 below, and the date of the Final Approval Hearing.

- 16 -

4.2     Lead Counsel shall request that after notice is given, the Court hold a Final Approval Hearing and approve the Settlement of the Litigation as set forth herein.  Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**5.     Releases**

5.1     The obligations incurred pursuant to this Stipulation shall be a full and final disposition of the Litigation and any and all Released Claims against Lead Plaintiffs, Lead Counsel, and all Released Parties.

5.2     Upon the Effective Date, the Lead Plaintiffs shall have, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished, dismissed, and discharged all Released Claims against the Released Parties, with prejudice and on the merits, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release form.  The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by operation of law to acknowledge, that the waiver of Unknown Claims, and of the provisions, rights and benefits of §1542 of the California Civil Code, was bargained for and is a key element of the Settlement of which the release in this paragraph is a part.

5.3     The Proof of Claim and Release form ("Proof of Claim") to be executed by Settlement Class Members shall release all Released Claims against the Released Parties and shall be substantially in the form contained in Exhibit A-3 attached hereto.

5.4     Upon the Effective Date, the Lead Plaintiffs and all Settlement Class Members and anyone claiming through or on behalf of any of them, are forever barred and enjoined from commencing, instituting, or continuing to prosecute any action or proceeding in any court of law or

equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting against any of the Released Parties, and each of them, any of the Released Claims.

5.5     Upon the Effective Date, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiffs, Settlement Class Members, and their attorneys (including, without limitation, Lead Counsel), employees, heirs, successors, and assigns from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

**6.     Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Settlement Fund**

6.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members.  The Claims Administrator will be subject to such supervision and direction from the Court and/or Lead Counsel as may be necessary or as circumstances may require. Defendants shall provide or cause to be provided to the Claims Administrator, without any charge to Lead Plaintiffs or the Settlement Class, their lists of purchasers and/or acquirers of the Certificates in electronic and searchable form, such as an Excel file, within fourteen (14) calendar days of execution of this Stipulation, as appropriate for providing notice to the Settlement Class.  To the extent such lists have already been produced to Lead Plaintiffs, they need not be provided again.

6.2     The Settlement Fund shall be applied as follows:

(a)     to pay all the fees and expenses reasonably and actually incurred in connection with providing notice to the Settlement Class, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proofs of Claim and paying escrow fees and costs, if any;

(b)     to pay the Taxes and Tax Expenses described in ¶2.7 hereof;

- 18 -

(c)      to pay Lead Plaintiffs' attorneys' fees and expenses and Lead Plaintiffs' expenses, including lost wages pursuant to 15 U.S.C. §77z-1(a)(4), if and to the extent allowed by the Court (the "Fee and Expense Award"); and

(d)      after the Effective Date, to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3      Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Claims Administrator, under the supervision of Lead Counsel and subject to the Court's jurisdiction, shall distribute the Net Settlement Fund to Authorized Claimants, subject to and in accordance with the following.

6.4      Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-3 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and as are reasonably available to the Authorized Claimant.

6.5      Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Released Parties concerning any Released Claims. Notwithstanding the foregoing, Lead

- 19 -

Counsel shall have the discretion to accept late-submitted claims for processing so long as distribution of the Net Settlement Fund is not materially delayed thereby.

6.6     The Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall cause such balance to be reallocated among Authorized Claimants in an equitable and economic fashion.

6.7     This Settlement is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes Final, no portion of the Settlement Fund will be returned to the Defendants. The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: the maintenance, investment, or distribution of the Net Settlement Fund; the establishment of the Escrow Account; the establishment or administration of the Plan of Allocation; and the administration of the Settlement, including, without limitation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. Defendants take no position with respect to the provisions of this Stipulation governing these issues.

6.8     No Person shall have any claim against Lead Plaintiffs, Lead Counsel, Defendants, their Related Parties, the Claims Administrator or other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court. This does not include any claim by any party for breach of this Stipulation.

759724_4

6.9     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein (including the releases contained herein), or any other orders entered pursuant to this Stipulation. The Plan of Allocation is not a necessary term of this Stipulation, and it is not a condition of this Stipulation that any particular Plan of Allocation be approved by the Court. Lead Plaintiffs and Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on the Court's or any appellate court's ruling with respect to the Plan of Allocation.

6.10    The Court shall maintain jurisdiction over all proceedings with respect to the Plan of Allocation, including disputed questions of law and fact with respect to the administration, processing and validity of Proofs of Claims submitted to the Claims Administrator.

**7.      Lead Plaintiffs' Attorneys' Fees and Expenses**

7.1     Counsel for the Lead Plaintiffs may submit an application or applications (the "Fee and Expense Application") for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) payment of expenses, including Lead Plaintiffs' expenses (including lost wages) paid pursuant to 15 U.S.C. §77z-1(a)(4), and the fees of any experts or consultants, incurred in connection with prosecuting the Litigation; plus (c) any interest on such fees and expenses at the same rate and for the same time periods as earned by the Settlement Fund (until paid), as may be

- 21 -

awarded by the Court. Lead Counsel reserves the right to make additional applications for distributions from the Settlement Fund for fees and expenses incurred.

7.2     The Fee and Expense Award, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses. Lead Counsel may thereafter allocate the attorneys' fees and expenses among counsel for plaintiffs in a manner in which they in good faith believe reflects the contributions of such counsel to the institution, prosecution and resolution of the Litigation. In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified by final non-appealable order, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then, without regard to whether Lead Counsel has allocated the attorneys' fees and expenses among counsel for plaintiffs, Lead Counsel shall be obligated, within ten (10) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, to refund to the Settlement Fund the fees and expenses previously paid to counsel for plaintiffs from the Settlement Fund plus interest paid thereon in an amount consistent with such reversal or modification.

7.3     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, including the fees of experts and consultants as well as any application of Lead Plaintiffs for reimbursement of expenses, including lost wages, to be paid out of the Settlement Fund, are not part of the Settlement set forth in this Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the

- 22 -

finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth herein (including the releases contained herein).

7.4     Defendants and their Related Parties shall have no responsibility for or liability with respect to the payment of any Fee and Expense Award to any counsel for plaintiffs over and above payment of the Settlement Amount, or with respect to the allocation among plaintiffs' counsel, and Defendants and their Related Parties shall take no position with respect to Lead Counsel's Fee and Expense Application.

**8.      Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

8.1     The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

(a)      the Settlement Amount has been deposited by Defendants into the Escrow Account maintained by the Escrow Agent, as required by ¶2.1 hereof;

(b)      the Court has entered the Preliminary Approval Order, as required by ¶4 hereof;

(c)      Defendants have not exercised their option to terminate the Stipulation pursuant to ¶8.3 hereof;

(d)      the Court has entered the Judgment in the form of Exhibit B attached hereto, or such other substantially similar form agreed to by the Settling Parties; and

(e)      the Judgment has become Final, as defined in ¶1.13 hereof.

8.2     Upon the occurrence of all of the events referenced in ¶8.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.   If all of the conditions specified in ¶8.1 herein are not met, then the

- 23 -

Stipulation shall be canceled and terminated subject to ¶2.8 and ¶8.4 herein unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with the Stipulation.

8.3     Defendants shall have the option to terminate the Settlement in the event that the dollar amount of the "Recognized Loss" (as defined in, and calculated pursuant to, the Plan of Allocation set forth in the Notice of Pendency of Settlement of Class Action) for Settlement Class Members who would otherwise be entitled to participate as members of the Settlement Class, but who timely and validly request exclusion, in the aggregate equals or exceeds the Opt-Out Threshold as set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Counsel and Defendants' Counsel, which is incorporated by reference into this Stipulation. The Opt-Out Threshold may be disclosed to the Court for purposes of approval of the Settlement, as may be required by the Court, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to maintain the Opt-Out Threshold as confidential. In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation shall become null and void and of no further force and effect.

8.4     Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or shall not become effective for any reason, then within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Amount (including any accrued interest), less any expenses and costs reasonably and actually incurred pursuant to ¶2.6 and/or ¶2.7 hereof and/or actually and properly paid from the Notice and Administration Fund pursuant to ¶2.6 and Taxes and Tax Expenses that have been paid pursuant to ¶2.7 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from Defendants' Counsel. At the request of Defendants' Counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after

- 24 -

deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from Defendants' Counsel.

8.5     In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation immediately prior to August 24, 2012. In such event, the terms and provisions of the Stipulation, with the exception of ¶2.2-¶2.8, and ¶8.4-¶8.7 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall constitute grounds for cancellation or termination of the Stipulation.

8.6     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Lead Plaintiffs nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed for notice costs and Taxes and Tax Expenses pursuant to ¶2.6 and ¶2.7 hereof. In addition, any expenses already incurred and properly chargeable pursuant to ¶2.6 and ¶2.7 herein at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶2.8 and ¶8.4 hereof.

8.7     If a case is commenced with respect to any Defendant under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Amount, or any portion thereof, by or on behalf of such Defendant to be a

- 25 -

preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not deposited into the Settlement Fund by others within fifteen (15) business days thereafter, then, at the election of Lead Plaintiffs, the Settling Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered and the Defendants, Lead Plaintiffs and the members of the Settlement Class shall be restored to their litigation positions immediately prior to August 24, 2012, and the Settlement Amount (including accrued interest, if any), less any expenses and costs reasonably and actually incurred pursuant to ¶2.6 and/or ¶2.7 hereof and/or actually and properly paid from the Notice and Administration Fund pursuant to ¶2.6 and Taxes and Tax Expenses that have been paid pursuant to ¶2.7 hereof, shall be refunded by the Escrow Agent as provided in ¶8.4.

**9.     Requests for Exclusion**

9.1     A Settlement Class Member requesting exclusion from the Settlement Class shall be requested to provide the following information to the Claims Administrator: (a) name; (b) address; (c) telephone number; (d) identity and original face value of Certificates purchased (or otherwise acquired) and/or sold (or otherwise disposed of); (e) prices or other consideration paid or received for such Certificates; (f) the date of each purchase or sale transaction; and (g) a statement that the Person wishes to be excluded from the Settlement Class. Unless otherwise ordered by the Court, any Settlement Class Member who does not submit a timely written request for exclusion as provided by ¶9.1 shall be bound by the Settlement in this Stipulation. Lead Plaintiffs shall request that the deadline for submitting requests for exclusion be at least twenty-one (21) calendar days prior to the Final Approval Hearing.

9.2     The Claims Administrator shall electronically send copies of all requests for exclusion in PDF format (or such other format as shall be mutually agreed by the Settling Parties) to

- 26 -

Defendants' Counsel and to Lead Counsel expeditiously (but not more than five (5) business days) after the Claims Administrator receives such a request.  As part of the motion papers in support of the Settlement of the Litigation, Lead Counsel will cause to be provided a list of all the persons who have requested exclusion from the Settlement Class, and shall cause to be certified that all requests for exclusion received by the Claims Administrator have been copied and provided to Defendants' Counsel.

**10.     No Admission of Wrongdoing**

10.1     Whether or not the Settlement in this Stipulation is approved by the Court, and whether or not it is consummated, the fact and terms of this Stipulation, including Exhibits, all negotiations, discussions, drafts, and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

(a)     shall not be offered or received against any of Defendants or their Related Parties as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of Defendants or their Related Parties with respect to the truth of any fact alleged by Lead Plaintiffs or the validity of any claim that has been or could have been asserted in this Litigation or in any litigation, or the deficiency of any defense that has been or could have been asserted in this Litigation or in any litigation, or of any liability, negligence, fault, or wrongdoing of any of Defendants or their Related Parties;

(b)     shall not be offered or received against any of Defendants or their Related Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any of Defendants;

(c)     shall not be offered or received against any of the Defendants or their Related Parties as evidence of a presumption, concession or admission with respect to any liability,

- 27 -

negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants or their Related Parties, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; provided, however, that if this Stipulation is approved by the Court, the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)   shall not be construed against any of Defendants or their Related Parties as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)   shall not be construed as or received into evidence as an admission, concession or presumption against Lead Plaintiffs or any other Settlement Class Members as to any issue, including that any of their claims are without merit, or that any defenses asserted by any of Defendants or their Related Parties have any merit, or that damages recoverable under the Complaint would not have exceeded the Settlement Fund.

**11.   Repurchase and Servicing Claims**

11.1   Settlement Class Members acknowledge that the Covered Trusts have asserted or may assert that they may have certain repurchase, servicing, or other similar claims related to the origination, sale, and servicing of the mortgage loans owned by the Covered Trusts (the "Alleged Repurchase and Servicing Claims") that could result in funds being (1) deposited in the Covered Trusts and thereafter distributed for the direct or indirect benefit of certificate holders of the Covered Trusts (such benefits including but not limited to distribution to certificate holders or increased subordination in the Covered Trusts) or (2) otherwise designated for distribution to such certificate holders (the "Trust Recoveries").

759724_4

11.2    Settlement Class Members acknowledge that value received by each of them pursuant to this Stipulation of Settlement shall offset portions of the Trust Recoveries that may be received by each of them as a result of Alleged Repurchase and Servicing Claims, regardless of which persons or entities  bear the immediate or ultimate responsibility for the Alleged Repurchase and Servicing Claims.  Settlement Class Members shall not act as part of a quorum of certificate holders to direct an action seeking any duplicative recovery with respect to the Covered Trusts.

11.3    No Admission of Liability.  Neither the execution of this Stipulation, nor of any other agreement in connection herewith, shall operate or be construed as any admission of liability, fault as to, or validity of, any of the Alleged Repurchase and Servicing Claims for any of the Covered Trusts.

**12.    Miscellaneous Provisions[3]**

12.1    The Settling Parties (a) acknowledge that it is their intent to consummate this Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of the Stipulation.

12.2    The Settling Parties to this Stipulation intend the Settlement of the Litigation to be the full, final and complete resolution of all claims asserted or which could have been asserted by the Settlement Class Members against the Released Parties with respect to the Released Claims. Accordingly, the Settling Parties agree not to assert in any forum or tribunal that the Litigation was brought, prosecuted or defended in bad faith or without a reasonable basis. The Judgment shall contain a finding that at all times each Settling Party and his, her, or its counsel has complied fully

---

[3]    The section headings used throughout this Stipulation are for convenience only and are not meant to have legal effect.

with Rule 11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense and settlement of the Litigation. The Settling Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the Settling Parties, and their respective counsel, and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

12.3    Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Defendant in any arbitration or civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants and their Related Parties may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

12.4    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation, pursuant to their terms.

12.5    All of the Exhibits to the Stipulation are material and integral parts herein and are fully incorporated herein by this reference.  Notwithstanding the foregoing, in the event there is an unintended conflict or inconsistency between the terms of this Stipulation and the terms of any Exhibit hereto, the terms of this Stipulation shall prevail.

12.6    This Stipulation shall not be construed more strictly against one Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for

- 30 -

one of the Settling Parties, it being recognized that the Stipulation is the result of arm's-length negotiations between the Settling Parties and that all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

12.7    The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

12.8    The Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto and no representations, warranties or inducements have been made to any Settling Party concerning the Stipulation or its Exhibits or the Supplemental Agreement other than the representations, warranties and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Settling Party shall bear its own costs.

12.9    Lead Counsel, on behalf of the Settlement Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which they deem appropriate.

12.10   Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any Settling Party hereto hereby warrants that such Person has the full authority to do so.

12.11   The Stipulation may be executed in one or more counterparts, including by signature transmitted by email in pdf format.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

759724_4

12.12   The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any party hereto may merge, consolidate, or reorganize.

12.13   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

12.14   The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New Mexico, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New Mexico without giving effect to that State's choice-of-law principles, except to the extent that federal law requires that federal law governs.

12.15   A waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of December 3, 2012.

ROBBINS GELLER RUDMAN
& DOWD LLP
DARREN J. ROBBINS
JONAH H. GOLDSTEIN
NATHAN R. LINDELL
ROBERT R. HENSSLER JR.
DANIELLE S. MYERS

DARREN J. ROBBINS

759724_4

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

*Lead Counsel for Plaintiffs*

LAW OFFICES OF NICHOLAS
    KOLUNCICH III, LLC
NICHOLAS KOLUNCICH III
6501 Americas Parkway NE
One Park Square – Suite 620
Albuquerque, NM 87107-5375
Telephone: 505/881-2228
505/881-4288 (fax)

*Liaison Counsel*

GIBSON, DUNN & CRUTCHER LLP
Robert F. Serio
Aric H. Wu


_____

200 Park Avenue
New York, NY 10166
Telephone: 212/351-4000
212/351-4035 (fax)

MONTGOMERY & ANDREWS
Victor R. Ortega
325 Paseo de Peralta
Santa Fe, NM 87504-2307
Telephone: 505/982-3873
505/982-4289 (fax)

- 33 -

759724_4

*Counsel for Defendants Banc of America Securities
LLC, Credit Suisse Securities (USA) LLC, RBS
Securities Inc. (f/k/a/ Greenwich Capital Markets,
Inc.), Greenwich Capital Acceptance, Inc. (n/k/a/
RBS Acceptance Inc.), Structured Asset Mortgage
Investments II, Inc., Robert J. McGinnis, Carol P.
Mathis, Joseph N. Walsh III, John C. Anderson and
James M. Esposito*

MORRISON & FOERSTER LLP
Joel C. Haims
LaSharn M. DeArcy

[ATTORNEY SIGNATURE]

1290 Avenue of the Americas
New York, NY 10104
Telephone: 212/468-8238
212/468-7900 (fax)

*Counsel for Defendants Michael B. Nierenberg and
Thomas F. Marano*

GREENBERG TRAURIG, LLP
Richard Edlin
Ronald D. Lefton
Candace Camarata


[ATTORNEY SIGNATURE]

200 Park Avenue
New York, NY 10166
Telephone: 212/801-9200
212/801-6400 (fax)

BROWNSTEIN HYATT FARBER SCHRECK
Eric Burris
201 Third St NW, Suite 1700
Albuquerque, NM 87102
Telephone: 505/244-0770
505/244-9266 (fax)

*Counsel for Defendant Jeffrey Mayer*

- 34 -

759724_4

*Counsel for Defendants Banc of America Securities
LLC, Credit Suisse Securities (USA) LLC, RBS
Securities Inc. (f/k/a/ Greenwich Capital Markets,
Inc.), Greenwich Capital Acceptance, Inc. (n/k/a/
RBS Acceptance Inc.), Structured Asset Mortgage
Investments II, Inc., Robert J. McGinnis, Carol P.
Mathis, Joseph N. Walsh III, John C. Anderson and
James M. Esposito*

MORRISON & FOERSTER LLP
Joel C. Haims
LaShann M. DeArcy

_____
[ATTORNEY SIGNATURE]

1290 Avenue of the Americas
New York, NY 10104
Telephone: 212/468-8238
212/468-7900 (fax)

*Counsel for Defendants Michael B. Nierenberg and
Thomas F. Marano*

GREENBERG TRAURIG, LLP
Richard Edlin
Ronald D. Lefton
Candace Camarata

_____
[ATTORNEY SIGNATURE]

200 Park Avenue
New York, NY 10166
Telephone: 212/801-9200
212/801-6400 (fax)

BROWNSTEIN HYATT FARBER SCHRECK
Eric Burris
201 Third St NW, Suite 1700
Albuquerque, NM 87102
Telephone: 505/244-0770
505/244-9266 (fax)

*Counsel for Defendant Jeffrey Mayer*

- 34 -

KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
Dani R. James
Jade A. Burns

_[ATTORNEY SIGNATURE]_

1177 Avenue of the Americas
New York, NY 10036
Telephone: 212/715-9100

BROWNSTEIN HYATT FARBER SCHRECK
Eric Burris
201 Third St NW, Suite 1700
Albuquerque, NM 87102
Telephone: 505/244-0770
505/244-9266 (fax)

*Counsel for Defendant Jeffrey L. Verschleiser*

- 35 -

759724_4

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 7, 2012.

s/ Darren J. Robbins
DARREN J. ROBBINS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: darrenr@rgrdlaw.com

# Mailing Information for a Case 1:09-cv-00300-JB-KBM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Floyd Abrams**
  fabrams@cahill.com

- **Jade A. Burns**
  jburns@kramerlevin.com

- **Eric R. Burris**
  eburris@bhfs.com,kgroman@bhfs.com,ecordero@bhfs.com,ywhitson@bhfs.com

- **Candace Camarata**
  camaratac@gtlaw.com

- **William H. Carpenter**
  bill@carpenter-law.com,RGonzales@carpenter-law.com,lsromero@carpenter-law.com

- **Michael R Comeau**
  mcomeau@cmtisantafe.com,sdevargas@cmtisantafe.com,receptionist@cmtisantafe.com

- **James J Coster**
  jcoster@ssbb.com

- **LaShann M DeArcy**
  ldearcy@mofo.com

- **Jonathan C. Dickey**
  jdickey@gibsondunn.com

- **Thomas A. Dubbs**
  tdubbs@labaton.com

- **Richard Edlin**
  edlinr@gtlaw.com

- **Andrew J Ehrlich**
  aehrlich@paulweiss.com

- **Martin Flumenbaum**
  mflumenbaum@paulweiss.com

- **Frederic S. Fox**
  ffox@kaplanfox.com

- **David J. Goldsmith**
  dgoldsmith@labaton.com

- **Jonah H. Goldstein**

jonahg@rgrdlaw.com,hbrown@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Joel Haims**
  jhaims@mofo.com,dziegler@mofo.com,docketny@mofo.com

- **Donald R. Hall**
  dhall@kaplanfox.com

- **Dani R. James**
  djames@kramerlevin.com

- **Robert N Kaplan**
  rkaplan@kaplanfox.com

- **Dean J. Kitchens**
  DKitchens@GibsonDunn.com

- **Nicholas Koluncich**
  nkoluncich@newmexicoclassactions.com,lisay@newmexicoclassactions.com

- **Ronald Lefton**
  leftonr@gtlaw.com

- **Nathan R Lindell**
  nlindell@rgrdlaw.com

- **Marshall G. Martin**
  mmartin@cmtisantafe.com,receptionist@cmtisantafe.com,mlegnetti@cmtisantafe.com

- **L Dana Martindale**
  dmartindale@rgrdlaw.com

- **Seth Campbell McMillan**
  smcmillan@montand.com,dortiz@montand.com

- **Laura Killian Mummert**
  lkillianmummert@labaton.com

- **Jason W Myatt**
  jmyatt@gibsondunn.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com

- **Ivy T Ngo**
  INgo@rgrdlaw.com

- **Victor R. Ortega**
  vortega@montand.com,dherrera@montand.com,cvaldez@montand.com,smcmillan@montand.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com,kathryns@rgrdlaw.com

- **Tammy Lynn Roy**
  troy@cahill.com

- **Josh M Rubins**
  jrubins@ssbb.com

- **Paul Scarlato**
  pscarlato@labaton.com

- **Allison Schnieders**
  aschnieders@mofo.com

- **Robert F Serio**
  rserio@gibsondunn.com

- **Mark F. Sheridan**
  msheridan@hollandhart.com,rsougstad@hollandhart.com,intaketeam@hollandhart.com

- **Luis G. Stelzner**
  lgs@stelznerlaw.com,dlujan@stelznerlaw.com,aw@stelznerlaw.com

- **Stefanie J. Sundel**
  ssundel@labaton.com

- **Robert P. Warburton**
  rpw@stelznerlaw.com,gbyrne@stelznerlaw.com

- **Julia Wood**
  jwood@paulweiss.com

- **Aric H Wu**
  awu@gibsondunn.com,mknox@gibsondunn.com,jmyatt@gibsondunn.com,gwinston@gibsondunn.com

- **Adam Zurofsky**
  azurofsky@cahill.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)